I am of opinion that the judgment is erroneous, and should be reversed.

JEWETT, J. also delivered an opinion in favor of reversal.

Judgment affirmed.

HYDE, receiver of the Chenango Mutual Insurance Com- [387] pany, *vs.* LYNDE.

By the charter of the Chenango Mutual Insurance Company, upon a sale of insured property, the policy became void, and the assured was entitled to have his deposit note surrendered and cancelled, *on paying his proportion of losses then incurred*. Under this provision the defendant surrendered a policy which he held from the company, and the secretary of the company cancelled and surrendered the deposit note. At the time of the surrender there were contested claims for losses, against the company, some of which were subsequently established, and the receiver appointed by the court of chancery made an assessment upon a class of deposit notes, including that of the defendant, for the purpose of paying such claims. The note had been given up without the payment of any thing toward the losses, but there was no proof of fraud, or of any mistake of fact in regard to the existing claims against the company. *Held*, that the surrender was a valid transaction, and that the receiver could not maintain an action on the note.

The amount to be paid by the insured, if any thing, toward previous losses on a surrender of the deposit note, is a subject of adjustment between him and the company, and when the adjustment is made and the policy and note are surrendered, the settlement is binding unless impeached on the ground of fraud or mistake.

The receiver of an insolvent corporation can not impeach or disaffirm the lawful and authorized acts of the corporation.

And where a corporate company has done acts in fraud of creditors, or members of the company, and a receiver is afterward appointed, *quere*, whether the remedy should be pursued in his name or in the names of the persons defrauded.

THIS was an action brought by Hyde, as receiver of the Chenango County Mutual Insurance Company, against Lynde, upon a deposit note as follows :

" $83,20. For value received in policy No. 3471, dated the 3d day of June, 1840, issued by the *Chenango County Mutual Insurance Company*, I promise to pay the said company, or

their treasurer for the time being, the sum of eighty-three dollars and twenty cents, in such portions and at such time or times as the directors of said company may, agreeably to their act of incorporation require. 　　　　　　　　　　　IRA LYNDE."

By the charter of the Chenango Mutual Insurance Company, [388] all persons insuring with the corporation were members of it while the insurance remained, and no longer. (*Laws of* 1836, *p.* 314, 42.) Every member was obliged, before receiving his policy, to deposit his promissory note for a sum of money determined on by the directors, of which he paid five per cent in cash, and the remainder was payable in whole, or in part, whenever the directors should require it for the payment of losses and expenses; and at the expiration of the time of insurance, the note, or the part which remained unpaid, after deducting all losses and expenses which accrued during the term, was to be given up to the maker. Upon a sale of the insured property, the policy became void, and was to be surrendered and cancelled, and the assured was entitled to receive his note upon the payment of his proportion of all losses and expenses which had accrued prior to the surrender. Every member of the company was bound to pay losses and expenses in proportion to the amount of his deposit note; and suits at law were authorized to be brought by the company against any of its members for the collection of their notes or any assessment thereon. In case any member sustained loss by fire, and the amount was ascertained either by the directors or by a recovery against the company, they determined the sums to be paid by the several members as their respective proportions of the loss, and advertised the assessment; and if any member neglected to pay within the time required by the statute, the directors were authorized to sue for and recover the whole amount of his deposit note, with costs of suit, and the amount collected remained in the treasury, subject to the payment of such losses and expenses as had accrued or might accrue; the balance, if any, to be returned to the party after the expiration of his term of insurance.

The defendant, on the 3d day of June, 1840, became a member of this company by effecting an insurance on his house and

Hyde *v.* Lynde.

barn and some personal property, and executing and depositing the note above set forth. In the following month of October the defendant sold the real property insured, and a part of the personal, to one Leach; and in March, 1842, surrendered his policy, and the secretary of the company cancelled and surrendered his note. In August, 1845, the attorney general filed a bill against the company, and in September following a [389] decree was obtained declaring the company insolvent and unable to pay their debts, and appointing a receiver to take charge of their property, and to collect and recover the debts and demands that might be due to them, &c.; the decree declaring that the receiver should possess all the powers conferred, and be subject to all the duties imposed upon receivers appointed in the case of the voluntary dissolution of a corporation, as provided by the revised statutes.

In September, 1846, the receiver made assessments upon several classes of deposit notes, one of which classes would have included the note in question, if it had not been given up; and the amount to be paid by the defendant would have been about eleven dollars and sixty-four cents. The defendant refused to pay, and in October, 1848, the receiver brought this suit as upon the deposit note, claiming to recover the whole amount which had not been previously paid. He proved that when he was appointed receiver there were several claims against the company for losses which happened between the making and giving up of the note in question, all of which claims were contested. In October, 1848, an order of the supreme court in equity was made, directing the receiver to pay Tracy Beadle, one of those claimants, $250, provided he would compromise his claim for that amount; and in January, 1849, there was an order that he pay Harry Jennings, another of those claimants, $500 on a compromise. What became of the other claims did not appear; nor did it appear whether a compromise was effected with Beadle. Nearly $600 was paid over to the receiver on his appointment by the treasurer of the company. Abel Chandler, who was the secretary of the company at the time, testified that he thought the defendant did not pay any thing at the time the

note was cancelled. He further testified, that the note would not have been surrendered if it had been supposed that any thing was due upon it; and that it was the invariable rule to require all assessments and liabilities to be paid before cancelling the notes. On this state of facts the judge who tried the cause at the circuit, directed the jury to find a verdict for the [390] plaintiff; and the jury found a verdict for $70,72, the amount claimed as remaining unpaid on the note. The supreme court sitting in the sixth district refused a new trial, and after judgment the defendant appealed to this court.

*Balcom & Clark*, for appellant.

*H. R. Mygatt*, for respondent.

BRONSON, Ch. J. A person who insures in the Chenango Company becomes by that act a member of the corporation. When he alienates the property insured, he may surrender the policy, and is thereupon entitled to his deposit note, upon the payment of his proportion of all losses and expenses that have accrued prior to such surrender; and he then ceases to be a member of the corporation. (*Stat.* 1836, *ch.* 238, *and p.* 43, §§ 2, 7. *And see Neely* v. *Onondaga Company*, 7 *Hill*, 49.) Whether any losses or expenses have accrued prior to that time which have not been satisfied, and which the company has not got funds in hand to satisfy; and how much, if any thing, ought to be paid by the person insured, are matters to be adjusted between him and the company before the note is given up. When the parties have come to an agreement, and the policy and the note have been surrendered, the individual ceases to be a member of the company; and all right to make assessments or calls upon him, or upon the note, is at an end. The settlement and surrender of securities are acts authorized by law; and, like other lawful acts, they are binding upon both parties, unless they can be impeached on the ground of fraud or mistake.

It is true, that the statute does not say, in terms, that the

parties may agree concerning the amount, if any thing, which should be paid to the company; but such must have been the intention of the legislature.

There is a provision of a similar kind for giving up the deposit note at the expiration of the term of insurance. (§ 6.) In that case, as well as in the other, the parties would be at liberty to agree whether any thing, and how much, ought [391] to be paid by the maker of the note on account of losses and expenses which had occurred during the term; and if they should come to an agreement and the note should be delivered up, neither party could impeach the transaction without showing such a fraud in the other party, or such a mutual mistake about some matter of fact, as would be sufficient to set aside any other settlement of differences between parties having conflicting interests.

I agree with the supreme court, that the deposit or premium notes are to be regarded as capital for the security of those who may deal with the company. But they can only be regarded as capital so long as they remain in the hands of the company; and not after they have been given up to the makers in pursuance of the charter.

It is not pretended that the defendant is chargeable with any fraud upon the company in procuring the surrender of the note; nor has the transaction been successfully impeached on the ground of a mutual mistake of the parties about any matter of fact. If the defendant paid nothing at the time of the surrender, it was evidently for the reason that the parties supposed there were no valid claims upon the company towards the payment of which the defendant ought to contribute; or none beyond the amount of funds in hand. The receiver proved that when he was appointed there were several claims against the company for losses which happened between the making and the giving up of the note: but the claims were all contested; and it was not shown that the amount which had since been established exceeded the amount of money which was paid over to the receiver at the time of his appointment, by the treasurer of the company. And besides, it would not have been enough

to show that the company made a bad bargain in giving up the note. So far as appears, the parties knew, at the time of the settlement, of all the claims upon the company for losses, and all the facts in relation to the claims, as fully as they do now; and if they made a mistake in judgment, either one way or the other, it would not invalidate the settlement. If they had come to the conclusion that some or all of the claims were valid, and [392] the defendant had paid fifty dollars as his proportion of the supposed losses, proof that all the claims turned out to be unfounded would not enable him to recover back the money. And on the other hand, if the company could show that some or all of the claims which the parties had deemed invalid turned out to be well founded, it would not enable the company to disregard the settlement, and recover upon the note which had been given up. Proof that the parties were mistaken in judgment concerning the validity of the claims could not annul the adjustment.

The recovery in this case seems to have gone upon the ground that the receiver had greater rights than those which belonged to the company. But for most, if not for all purposes, he took the place, and stands as the representative of the company. He is as much bound by a settlement which the company was authorized to make, as was the company itself. It would be strange, indeed, if the legal acts of a corporation did not bind the receiver of its effects. If the rule were not so, no one would dare venture to deal with a corporation. This is not like *Leavitt* v. *Palmer*, (3 *Comst.* 19,) and *Gillet* v. *Moody*, (3 *id.* 479.) In each of those cases the act of the company which the receiver sought to avoid was forbidden by law. It was an illegal act. The case of *Brouwer* v. *Hill*, (1 *Sandf. Supr. Ct.* 629) stands on the same ground. The judge said, the company itself might have maintained the action. Here, the receiver attempts to repudiate a legal transaction of the company. I think it quite clear that such a thing can not be done.

If the settlement, though a lawful act in itself, had been made for an illegal purpose: if, for example, the parties had known that there were valid claims against the company to the

payment of which the defendant ought to contribute, and yet the note was given up without consideration, for the purpose of defrauding either the creditors, or the other members of the corporation, the persons defrauded would undoubtedly have a remedy. But I do not see how the receiver could sue. It would be like the case of a conveyance of property made for the purpose of defrauding the creditors of the grantor; which, though void as against the persons intended to be defrauded, is nevertheless valid against the grantor, and all who represent [393] him. A receiver of the effects of such a grantor could not avoid the grant. Neither can this receiver avoid a settlement which bound the corporation, though, in the supposed case, it was a fraud upon the creditors and other members of the company. The persons injured must sue. It is not necessary, however, to decide that question in this case; for there is no proof that the settlement was made with intent to defraud any one. At the most, the evidence only shows that the company made a bad bargain; and that is far enough from making out such a case as would enable creditors, or any one else, to set aside the transaction.

I am of opinion that the judgment is erroneous, and should be reversed.

HURLBUT, J. (dissenting.) The defendant insists that the surrender and cancellation of the note is a complete bar to a recovery upon it; that if it was cancelled without payment by the defendant of his just proportions of the losses and expenses of the company, the receiver could only have resorted to a special action to recover such proportion, which should have been brought within six years after the surrender of the note.

I think this position is unsound. The receiver is at least in as good a condition to recover on this note as the company would have been, had they remained solvent and continued to carry on their business. Although the policy became liable to be surrendered as to so much of the insured property as had been sold by Lynde; the note nevertheless, in contemplation of law remained a binding obligation of the defendant, who

was liable to pay all just assessments upon it for losses and expenses which had accrued before the surrender of the policy. The defendant paid nothing for the cancellation of the note; so that the transaction is left to be reviewed as one destitute of consideration, and to be tested by the provisions of the statute incorporating the company. The language of the act cannot be misunderstood. It plainly declares the terms upon which only the defendant was entitled to receive his note, and this was upon the payment of his just proportion of all losses and expenses.

[394] This he does not pretend to have done; and now to permit a mere naked surrender of the note by the secretary of the company, without a reckoning of the losses and expenses to which it was subject, and without consideration, to defeat a recovery for the benefit of the creditors of the corporation, would not only be to violate the language and spirit of the charter, but would operate as a fraud upon creditors.

These premium notes constituted the entire fund out of which the losses of the company were to have been paid. If one could have been surrendered without consideration and without payment of its proportion of losses, all might have been, and thus through the mere grace or recklessness of a secretary the entire security of persons insured might have been annihilated. A result so disastrous and unjust can not be permitted to be wrought with so great facility. It is far better to treat these notes as the creatures of the statute, and bound to answer the purpose of their creation. They are permitted to exist for a specific purpose, and until that is answered they can not be annulled. They are not subject to the mere will of any man, but are controlled by the will of the legislature. The statute appointed them as security for losses and expenses, and they must be regarded as obligatory, until they are satisfied. As the creatures of the statute they can only be delivered up and cancelled according to its provisions. The surrender in the present instance was therefore simply void, and the case is to be regarded as though this abortive act had not been performed. This conclusion rests upon the facts presented in the

bill of exceptions, which rebut the presumption that might have arisen in favor of the defendant, had the mere fact of surrender and cancellation appeared without its attendant circumstances.

Nothing was paid as a consideration for the surrender of the note, nor was there any account of losses and expenses to which it was subject; while it satisfactorily appears that losses had accrued before the note was surrendered for which it was liable to be assessed. This continued the obligation of the note, and subjected it to the power of the receiver, whose duty it became to enforce it for the benefit of the creditors of the company.

The note was payable in such portions and at such [395] times as the directors might legally require. The receiver was endowed with all requisite authority to secure and enforce obligations in favor of the company. The assessment made by him and which embraced this note, for aught that appears, was a proper requirement, and rendered so much as he called for, due and payable. Until then the time of payment had not become fixed, so that the statute of limitations had not run against the note. Nor is there any thing in the objection that the suit should have been brought within six years after the surrender of the note. The action is not based on a tortious cancellation of the instrument; it is rightfully brought on the note itself, which the plaintiff asserts still exists as a valid security. An alledged cancellation and surrender of it is presented, as an obstacle to his recovery, and he shows that the act of surrender was unauthorized and void. This leaves him to recover on the note itself, as if no surrender had been set up.

The offer to prove that the company was solvent was properly overruled. The appointment of receiver concluded the defendant, who if not a member of the company stood in the relation merely of their debtor, and was not at liberty to question collaterally the facts upon which the court of chancery acted in appointing the receiver, nor could this evidence otherwise have aided the defence, as it did not tend to show that the defendant had paid his just proportion of the losses and expenses of the company, which seems to have been the only thing that could have helped him.

I perceive no material error in the rulings at the circuit in respect to the admissibility of evidence. The books of the company were prima facie evidence against the defendant, so far at least as to prove their by-laws, and their transactions while he remained a member of the concern; and the losses which accrued, I think were sufficiently proved otherwise.

On the whole I think the learned judge at the circuit was justified in directing the jury to find in favor of the plaintiff, and that the judgment of the supreme court must be affirmed.

Judgment reversed, and new trial granted.