DANIEL M. HOWARD *et als.*, receivers, &c.

*vs.*

JOAB W. PALMER and another.

*Promissory notes as capital stock—what is sufficient consideration.*

The charter of a Mutual Insurance Company, having no capital stock, authorized the company "for the better security of those concerned," to receive notes for premiums in advance of persons intending to receive its policies, and to negotiate such notes, "for the purpose of paying claims, or otherwise in the course of its business," and a compensation was to be allowed and paid the signers at a rate to be determined by the trustees; *held :*

I. That such notes were on sufficient consideration.

II. That the authority given by statute, the security thus held out to dealers, and the compensation afforded signers for the credit thus acquired, and the association and agreement of the parties giving such notes, furnished a valid legal consideration for such notes.

III. That such notes were to be regarded as the capital stock of the company, or a substitute therefor.

IV. That if the security of the dealers with the company required their enforcement, they were valid and could be enforced in the hands of receivers, the company being insolvent, to pay its losses.

A note payable to the order of A. B. is equivalent to one payable to A. B. or order.

It is not a defence that no insurance has been effected under the open policies for which the notes in question were given—nor that the company has become insolvent.

ON REPORT.

ASSUMPSIT upon this note :

"BANGOR, April 26, 1870."

"$1,001.  Eight months after date we promise to pay to the order of the Maine Mutual Marine Insurance Company one thousand and one dollars, payable at Bangor, Maine.  Value received.

PALMER & JOHNSON."

This insurance company was incorporated by Special Laws of 1870, c. 470, and became insolvent, was enjoined, and the present plaintiffs appointed receivers under the statute in May, 1873.

There were four actions brought by the receivers, upon notes of like tenor to the above, (but signed by other parties,) three in their own names and one in that of the company, the reports of which immediately follow this.  The same statement of facts as to the form, origin and purpose of the notes, the incorporation, proceedings and insolvency of the company, and the line of defence there to is applicable to all these cases, and is to be found in the opinion.  Some additional facts were supposed to affect the other cases as will appear in the report of them.  In one of the four, no extended opinion was given, the cause being determined by those hereinafter reported.

*A. W. Paine, C. P. Stetson* and *A. A. Strout* for the plaintiffs.

The plaintiffs claim to recover by virtue of the special provisions of the charter. The sixth section provides that the maximum liability of each member shall be the amount of premiums he has paid, or for which he has given his note. Every man knew that he gave his note, not merely for premiums, but to give the company credit and to secure its liabilities. The seventh section provides that each member before he receives his policy, shall pay the rates fixed and determined, &c., either in money or note, and that no such premium shall be withdrawn, but shall be liable for all losses and expenses of the company during its charter. The counsel in extended arguments referred to the various other provisions of the charter and by-laws, and cited numerous cases in support of the positions taken, the nature of which is apparent from the opinion.

*J. S. Rowe* and *Wilson & Woodard* for the defendants.

The whole contract, if any exists between these parties, is in writing, and we object to any attempt to vary it by parol. The agreement of the subscribers shows the consideration of the note; i. e., premiums in advance of persons intending to receive policies. If no policy was received before the company was enjoined, then the consideration failed. The obligation was mutual. The company were bound to insure to an amount equivalent to the premium; and if this was not done, there was no liability upon the note. Every person who read the charter (and everybody was legally bound to know its contents) could see that these notes were to secure claims only by being negotiated; not by being held as a trust fund in the hands of the company.

APPLETON, C. J. The Maine Mutual Marine Insurance Company, of which these plaintiffs were appointed receivers, was incorporated by an act approved March 16, 1870, c. 470, with full power "by instrument under seal or otherwise, to make insurance on vessels, freights, money, goods, wares, merchandise, bottomry, respondentia interest, and other insurances appertaining to or connected with marine or internal navigation risks," &c. The

corporate powers of the company were to be exercised by a board of trustees and such officers and agents as they might appoint. Every person insured was a member of the corporation during the period of his insurance and no longer ; and every person holding the certificates provided for by § 12 of the act of incorporation. The members were not to be liable beyond the amount of premiums or of the notes given therefor ; which however are made liable for all losses and expenses incurred by the company during its charter.

By § 9, the company for the better security of those concerned may receive notes for premiums in advance of persons intending to receive policies and may negotiate such notes for the purpose of paying claims or otherwise in the course of its business and a compensation to the signers thereof may be allowed and paid at a rate to be determined by the trustees, but not exceeding six per cent. per annum."

By § 7 of the by-laws it was provided that "the company for the better security of its dealers may receive approved notes in advance and allow a compensation to the signers thereof; and the trustees shall have authority at all times to surrender to the signers thereof any notes thus given and for which a compensation is allowed, whenever they conceive the interest of the company requires them to do so and the safety of the company allows it."

By a vote of the trustees of January 26, 1872, three per cent. per annum was to be paid on each note advanced the company under § 7 of its by-laws, in all cases where those furnishing them have done no business with the company, and that the same be allowed on all notes on which business has been done ; that is, on all amounts over and above the business done.

Before the company went into operation the defendants and others signed the following agreement : "We, the undersigned, agree to advance our notes for premiums in advance to the Maine Mutual Marine Insurance Company, to the amount set against our names, respectively, in accordance with the charter and by-laws of the company."

By the tenth section of the charter it was provided that no policy should be issued until application should be made for insurance to the amount of fifty thousand dollars.

The defendant, Palmer, was one of the directors. At the time he gave the note in suit he received an open policy, but has had no insurance under it. Notes given by the defendants and by the other signers of the above agreement under similar circumstances, constituted forty two thousand dollars of the capital of the company. All those giving such notes were regarded as applicants for insurance under § 10. The notes of the above description with premiums for insurance constituted all the assets and made up the sum of fifty thousand dollars which the statute required before any policies could be issued.

The company having by premiums and these notes given in pursuance of § 9 of the charter and § 7 of the by-laws, obtained applications for insurance to the amount required by statute, commenced business, but becoming insolvent it was enjoined from further proceeding, and the plaintiffs were appointed receivers and gave the bonds required by law.

This action is brought upon the defendants' note. The defence is that it was given for premiums in advance; that the defendants had no insurance under it; that it was never negotiated; and that it is void for want of consideration.

The notes in controversy were given by the authority of the statute under which the company was organized. "I look upon this note," remarks Gray, J., in *Deraismes* v. *The Merchants Mutual Insurance Company*, 1 Comst., 375, where a similar question was presented for decision, "as a statutory note, the validity of which may be rested entirely upon the statute authorizing it to be taken, and does not at all depend upon any question of consideration." Further, these notes were given "for the better security of those concerned." If void, where would be the better security? They were given to be negotiated to pay claims or otherwise in the course of the business of the company and "for the better security of its dealers." A compensation was allowed

the signers for this use of their names. These notes constituted and were represented to the public as constituting a part of its assets; indeed almost the whole of its assets. The credit of the company was based upon their existence and their validity. These considerations amply suffice to render the notes valid. Further, the agreement signed by the defendants with others interested as associates in the company, to give their notes respectively, and to share the liabilities and enjoy the advantages secured by its charter constitute a consideration amply sufficient to uphold the notes in suit. *Brouwer* v. *Appleby*, 1 Sandf., 158; *House* v. *Allen*, Ib., 171; *Brouwer* v. *Hill*, Ib., 629; *Howland* v. *Myers*, 3 Comst., 290. It is to be observed that the charters referred to in the cases cited are almost identical in language with the one under consideration.

Premium notes for risks are to be paid. Premium notes are the notes of applicants for insurance. The note in suit is the note of an applicant for insurance. Both classes of securities make up the amount required before policies can be issued. So far as relates to the public, the dealers with the company, notes upon open policies where there have been no insurances and notes for risks taken are to be regarded alike as for the security of policy holders. The company is estopped to assert that they have falsely and fraudulently misstated them as assets in their advertisements to the public. The signers of notes like the one in suit are not to be permitted to say that they have uttered notes without consideration and valueless, for the purpose of misleading or defrauding those who have trusted in their integrity. The object of these notes was "for the better security of the dealers" with the company. That too was the design of the legislature. It would be in direct violation of the legislative intention and a gross fraud upon the dealers, creditors of the company, to hold that the notes and securities upon the basis of which the public were induced to give it credit and transact business with it, were utterly void or available only to the extent of the actual insurances indorsed on the open policies of the company.

These notes are made negotiable by statute. It can hardly be questioned that if negotiated, their payment could be enforced by an indorsee for value. But if not negotiated the purposes for which they were given may equally require their enforcement. They were given "for the better security of those concerned." They were received by the company "for the better security of its dealers." Who are those concerned? Who are the dealers of the company for whose "better security" these notes were given? The holders of unpaid policies where the contemplated risks have been incurred. · The purpose for which they were given is equally promoted by enforcing their collection for the "better security" of the dealers with the company as for the benefit of its endorsees.

The notes by the seventh by-law are not to be given up, unless the interest of the company requires it and the safety of the company allows it. The interest of the company requires integrity. The safety of the company consists in its solvency. The surrender of its assets is alike at variance with its integrity and its solvency. If by its misfortunes it has ceased to be solvent, it can still remain honest.

It was the duty of the company to collect these notes "for the better security of its dealers." Having become insolvent the law has devolved that duty upon its officers.

The case of *Pendergast* v. *Commercial Mutual Marine Company*, 15 Gray, 257, has been cited and relied upon by the defence; but we think it does not apply. In an open policy it is generally understood that the insured is only liable upon his note to the extent of the insurance obtained. But in the present case the notes were given for more than the policy. They were given "for the better security of the dealers" with the company. They were held out to the world as a portion of its assets. The signers were paid for signing them.

It is objected that the note is payable to the order of the Maine Mutual Marine Insurance Company and has not been indorsed. It may have been once doubted whether a note payable to the order of A. B. was equivalent to one payable to A. B. or order, but

it has long been settled that a note payable to a man and his order, or to his order only, is one and the same thing. The note was enforceable in the name of the payee. The law vests the title in the receivers and the action is properly maintainable in their names. *Defendants defaulted.*

CUTTING, WALTON, BARROWS and DANFORTH, JJ., concurred.

PETERS, J., having been of counsel did not sit in these cases.