## Given, Receiver, Appellant *v.* J. M. Rettew.

*Live stock insurance—Mutual companies—Assessment.*

Where an insurance company, although organized upon the mutual plan, has the power to issue cash policies, the mere fact of membership does not necessarily imply the liability to assessment.

In such a case a person applying for insurance, who is given a policy which upon its face is for cash alone, is not bound by a by-law of which he has no notice, providing that every member should be liable "to pay his or her proportion of all losses and expenses at such time or times as the directors for the time being may require, in proportion to the amount insured by such members."

*Corporations—By-laws—Notice.*

While the member of a mutual insurance company is bound to inform himself of the by-laws of the company after he has become a member, and to govern his future conduct by them, he is not bound to make himself acquainted with the by-laws before he becomes a member, and if he makes a contract with the company which excludes them in any particular, in that particular they do not bind him.

Argued May 30, 1894. Appeal, No. 35, May T., 1894, by plaintiff, W. B. Given, Receiver of the Lancaster County Mutual Live Stock & Chattel Theft Insurance Co., from judgment of C. P. Dauphin Co., March T., 1894, No. 117, in favor of defendant on trial by court without jury. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit for assessment by receiver.

The following opinion was filed by McPHERSON, J.:

" This case was tried without a jury, under the act of 1874. From the papers offered in evidence, and the agreement of the parties, we find the following facts :

" 1. The Lancaster County Mutual Live Stock and Chattel Theft Insurance Company is a corporation of this commonwealth, duly chartered on August 26, 1885, under the insurance act of May 1, 1876, P. L. 53. Its principal place of business was in the county of Lancaster, but its articles of association (or charter and certificate) were never recorded in that county, or in any other county of the commonwealth.

" 2. The company began the business of insurance against theft, as authorized by its charter, and continued to carry it on until February, 1892, when it was dissolved by a decree of this court. The plaintiff was appointed receiver, and in July of that year was empowered ' to lay an assessment of twelve per centum on all amounts insured in said company, on policies which were assessable on the twenty-fifth day of September, 1891, under the provisions of section seven of the by-laws.'

" In accordance with this order the assessment was laid ; whereupon, in September and October, certain policy-holders who had been assessed petitioned the court to rescind the order, alleging various matters of defence.   These petitions were refused in April, 1893, but expressly without prejudice to any right of the petitioners to make whatever defence they might desire when suits were brought to collect the assessment.

" All the papers of record in Commonwealth v. Lancaster County, etc. Ins. Co., No. 479, Sept. Term, 1891, Dauphin Common Pleas, are made part of this finding.

" 3. The present suit is brought to recover the sum of $48.00, duly assessed by the receiver upon the defendant's policy of $400, but of which the payment is refused, because it is alleged that the contract between the company and the defendant is non-assessable.

" The defendant's application and policy, his two promissory notes and the company's by-laws are made part of this finding. [The defendant had no knowledge of the by-laws at the time the contract was made.] [1]

" 4. When the policy was issued in September, 1890, the defendant paid $5.25 to the company's agent, being the cash premium stated in the policy ; and also delivered his two promissory notes for $4.00 each, in the ordinary form (except that they were non-negotiable), payable in one and two years respectively, being the annual payment referred to on the face of the pol-

icy, and spoken of on the back of the policy as ' conditions of insurance.' These notes were duly paid at maturity.

## " CONCLUSIONS OF LAW.

" [If the defendant is liable in this action his liability must. rest upon the ground, that he became subject to assessment merely by joining the company, and in spite of the silence of' his policy on this subject. We do not think this ground can be successfully maintained.] [2] ￢ It is true that each person insured in a mutual company becomes a member by the fact of' insurance (Susquehanna Ins. Co. v. Perrine, 7 W. & S. 348),. but it is not true that every member is liable to assessment. Those who are insured upon the cash plan have already made their full contribution to the common fund, and cannot be fur- ther burdened : Schimpf v. Ins. Co., 86 Pa. 373 ; Lycoming Ins. Co. v. Com., 10 W. N. 230.

" The plaintiff concedes the soundness of this proposition, but avers that the policies of this company were all assessable because no other could be issued under section 34 of the act of 1876, P. L. 63, which declares that ' Companies incorporated under this act must be organized upon the joint stock or mu- tual plan, and the power to insure upon both plans shall not exist in the same corporation.' . . . This argument was not much pressed, however, and we need only say in reply—as was said in Schimpf v. Insurance Company—' We must not con- found a stock policy with a cash policy. They are essentially different. ﹒The payment of a cash premium does not decide the character of a policy as to whether it is mutual or stock. A mutual company may insure for either note or cash, so may a stock company. The distinction between them rests on dif- ferent principles. A stock policy is issued solely upon the credit of the capital stock of the company to one who may be an entire stranger to the corporation, who acquires no right of membership by reason of his policy, no right to participate in its profits, and who subjects himself to no liability by reason of its losses. ' . . . This is the ' joint stock plan ' referred to by the act of 1876. ' Mutual companies, on the other hand, are somewhat of the nature of a partnership ; the insured becomes a member of the incorporation by virtue of his policy, is enti- tled to a share of the profits, and is responsible for the losses to

the extent of his premium paid or agreed to be paid.' This is the ' mutual plan ' referred to by the act; and it seems to us quite clear that the section in question simply forbids the incorporation of a company to insure upon both plans at the same time, and is not concerned with the kinds of policies which a mutual company may issue. [This company, therefore, although organized upon the mutual plan, had the power to issue cash policies ; and it seems to follow that, if the defendant's policy was of this description, the mere fact of his membership did not necessarily imply a liability to assessment.] [3]

" [If, then, we turn to the defendant's contract, we find no language therein which either expresses or implies that assessment thereof is possible. Neither in the application, nor in the policy, nor in the ' conditions of insurance ' indorsed upon the policy, nor in the notes given as part of the premium, is there the remotest allusion to the possibility of future assessment; but the whole contract is plainly based upon a distinctly specified cash premium, of which a part was paid when the policy was delivered, and the remainder was payable (and was afterwards paid) in two installments.] [4]

" This is insurance upon the cash plan as explained in Schimpf v. Insurance Company, and there would be no ground at all for the plaintiff's contention if it was not for the company's seventh by-law, which provides as follows : ' Each and every person insured shall thereby become a member of the company, and shall be liable to pay his or her proportion of all losses and expenses at such time or times as the directors for the time being may require, in proportion to the amount insured by such members.' Even this language is ambiguous. It does not in terms speak of assessment, and while it may mean that future assessments are to be expected, the inference might also be drawn that the due ' proportion of all losses and expenses ' chargeable to a cash policy was estimated in advance and charged against the policy ; and especially might this inference seem reasonable, if it was observed that each note accompanying a cash policy was made for a definite proportion, namely, one per cent of the amount insured by such policy. And as this proportion was to be paid in any event, even if there were no losses or expenses to be met thereby, it might fairly be said that these notes were given for

assessments estimated in advance to cover contingent losses and expenses, and, therefore, that the obligation of the by-law was fully met when the notes were paid.

" But, assuming the by-law to refer only to future assessments, the question remains : Was the defendant bound by it? It certainly was not brought to his notice before the policy was issued. The company's charter was never recorded ; its by-laws were not printed upon its policies, and are in no way alluded to therein ; the defendant did not know their contents, and they are not referred to in his contract, either directly or indirectly ; and, therefore, the only knowledge with which the defendant can be fairly charged is such as he might derive from the fact that the corporation was called a ' mutual ' company. But this word does not necessarily imply that every policy would be liable to assessment. [Mutual companies may issue cash policies as well as policies subject to assessment, and therefore the defendant was not bound to suppose that, when the company offered him a policy which upon its face was for cash alone, nevertheless there might be a by-law which contradicted the face of the policy and turned it into a contract liable to assessment.] [5]

" The plaintiff argues, however—and this is the point upon which most stress is laid—that the defendant, being a member of the company, is bound by its by-laws, and cites several cases in support of this proposition, among them Mitchell v. Ins. Co., 51 Pa. 402, and Burger v. Ins. Co., 71 Pa. 422. The proposition is not denied, but it does not now apply. In the cases cited the point decided was that, after the insured had become a member, he was bound to learn the rules of the company, and to be governed by them as to his future conduct ; for example, as to selling the property insured, or as to obtaining additional insurance thereon. But this does not affect the present question, which has to do solely with the relations between the company and an applicant for insurance before he becomes a member. Upon this question there is an early case (Ins. Co. v. Perrine, 7 W. & S. 351), which held the applicant to be bound by a regulation of which he did not have actual knowledge ; the decision being put upon the ground that, as the applicant was bound to know from the act of incorporation (P. L. of 1839, page 124) that he was about to become a member,

the court would presume that he had made himself acquainted with the company's regulations. This ruling may still be valid upon the precise point then involved; but it has several times been distinguished, and as a general proposition can certainly not be sustained. The modern cases do not presume that the applicant knows what common experience has taught us that he does not know, but they treat him as a stranger to the company until the contract is made and until membership is thus acquired (Ins. Co. v. Woodworth, 83 Pa. 223; Eilenberger v. Ins. Co., 89 Pa. 469; Kister v. Ins. Co., 128 Pa. 553; Meyers v. Ins. Co., 156 Pa. 425); and accordingly the essential inquiry is concerning the terms of that contract: Ins. Co. v. Staats, 4 Penny. 319. If he knows of the by-laws and accepts them as part of his contract—for example, if they are referred to therein—they bind him; but if he makes a contract which excludes them in any particular, in that particular they do not bind him.

" [In the case before us the company had the lawful power to make two kinds of contracts; one assessable, and the other non-assessable. It offered the defendant a non-assessable contract; he accepted it, and became a member upon those terms. Neither the company, therefore, nor the receiver can now substitute a different contract for the agreement which was then made, and recover upon a term to which the defendant did not agree, either expressly or by any reasonable implication.] [6]

" The case of Dettra, Receiver, etc., v. Kestner, 147 Pa. 566, was decided upon other grounds and does not conflict in the least with the conclusion just stated. There the contracts were assessable, and were enforced in spite of certain fraudulent inducements held out by the company, the reason being, that the rights of innocent third persons had intervened, and required that the defence of fraud should be excluded and the contracts upheld. Here, the contract is non-assessable, and the insured has already discharged every obligation which it lays upon him. Under such circumstances, not even an innocent third party can call upon him to do anything more.

" [We conclude, therefore, that the plaintiff is not entitled to recover, and direct the prothonotary to enter judgment in favor of the defendant if exceptions are not filed according to law.] " [7]

Exceptions to the findings in brackets were dismissed in the following opinion:

" The exception which alleges that the court erred in finding that the defendant had no knowledge of the by-laws at the time the contract was made, may properly receive a few words of explanation. We suppose this exception is based upon the fact that the written stipulation of counsel contains no direct evidence on the subject of knowledge, and if the stipulation was to be regarded as a case stated we would concede a good deal of force to the objection. It is not a case stated, however, but is a mere agreement concerning the evidence which was intended to bring certain facts to our attention during the trial, but which left us free to draw, or to notice, any proper inferences therefrom. It is quite true that no direct evidence in the case affirms that the defendant was ignorant of the by-laws at the time the contract was made, but in our opinion there is a presumption or an inference of fact that he had no knowledge of the by-laws, which continues until such knowledge is established by satisfactory evidence.

" But even if the presumption of fact does not exist the finding is substantially correct, unless there is an opposite presumption—and we do not think there is—that an intending insurer *does* know the by-laws of the company in which he proposes to insure. For as there is no positive evidence upon the subject, we would be obliged to find that the fact of knowledge was not proved, and, therefore, that we must regard the insurer as ignorant. Practically, this finding is equivalent to what is now objected to.

" Moreover, even if the exception were sustained, the plaintiff would be in no better case. Our conclusion would not be changed even if the finding of fact complained of were stricken out, for there would then be no finding and no presumption on this subject of knowledge, while it would still be true that each policy in question is a cash policy, and is, therefore, not assessable."

*Errors assigned* were (1–7) dismissal of exceptions, quoting them.

*Robert Snodgrass, George Nauman* with him, for appellant, cited: Acts of May 1, 1876, § 2, 34, P. L. 53; May 11, 1881, P. L. 20; Wood on Ins., § 509; Hackney v. Ins. Co., 4 Pa.

186 ; Mitchell v. Ins. Co., 51 Pa. 411 ; Burger v. Ins. Co., 71 Pa. 424; Ins. Co. v. Woodworth, 83 Pa. 223 ; Koehler v. Beeber, 122 Pa. 291; Clark v. Nav. Co., 10 Watts, 366 ; Turnpike Co. v. McConaby, 16 S. & R. 144; Weinman v. Ry., 118 Pa. 203 ; Ins. Co. v. Perrine, 7 W. & S. 348 ; Dettra v. Kestner, 147 Pa. 566.

*W. U. Hensel*, for appellee, cited : Schimpf v. Ins. Co., 86 Pa. 373 ; Com. v. Merchants & Mechanics Co., 2 Pearson, 428 ; 2 May on Ins., §§ 23, 140, 144, 345 E., 541 ; Ins. Co. v. Staats, 4 Penny. 313 ; Lloyd v. Bank, 15 Pa. 174 ; Fire Assn. v. Williamson, 26 Pa. 196 ; Desilver v. State Co., 38 Pa. 130 ; Susquehanna Co. v. Perrine, 7 W. & S. 348 ; Nassauer v. Ins. Co., 109 Pa. 507 ; Ins. Co. v. Woodworth, 83 Pa. 226 ; Ins. Co. v. Pitts. Exposition Co., 11 Atl. R. 572; Phila. Tool Co. v. Assurance Co., 132 Pa. 241 ; Durar v. Ins. Co., 24 N. J. L. 171 ; Com. v. Monitor Co., 112 Mass. 150 ; Hays v. Ins. Co., 98 Pa. 191; Ins. Co. v. Humble, 100 Pa. 499; Jones v. Building Assn., 94 Pa. 215 ; Kistner v. Ins. Co., 128 Pa. 553.

PER CURIAM, July 11, 1894 :

Our examination of this record discloses no substantial error in the court's findings of fact or conclusions of law.   In the latter, it is virtually held, inter alia, that the policy executed by the company and accepted by the defendant was non-assessable and defendant having paid all that was required by the terms of his contract, neither the company nor the receiver had any further claim on him.   This conclusion, we think, was fully warranted, and is of itself conclusive of defendant's right to judgment.   These and other questions presented by the specifications of error have been so fully considered by the learned trial judge that little, if anything, can be added to what has been so well said in his opinion, and, for reasons there given at length, we think the judgment should be affirmed.

Judgment affirmed on the opinion of the court below.