BUCK, Appelant, v. ROSS, et al, Respondents.

(240 N. W. 858.)

(File No. 7211. Opinion filed February 17, 1932.)

*Case & Case,* of Watertown, for Appellant.
*Loucks & Wohlheter,* of Watertown, for Respondents.

RUDOLPH, J. This action was brought by the plaintiff, as receiver of the Integrity Mutual Casualty Company, a corporation, to recover from the defendants the balance alleged to be due upon a premium agreed to be paid for a policy of employer's liability

insurance, insuring the defendants against liability during the year 1926. The complaint alleged the incorporation of the Integrity Mutual Casualty Company (hereinafter referred to as the company); the authorization to carry on business in this state; the appointment of the plaintiff as receiver of the company by the United States District Court for the Northern District of Illinois on the 29th day of May, 1926; the application by the defendants to the company for a policy of insurance for the year 1926 and the issuance by the company of the policy; that the premium was to be determined by the pay roll of the defendants; the payment of the premium up to the 29th day of May, 1926; and alleged a balance due under the terms of the policy for the premium period ending December 31, 1926. The complaint further alleged in paragraph five that the company was a mutual company, and that the defendant, as a policyholder, was mutually liable with other policyholders for the indebtedness and liabilities of the company. The answer admitted that the defendants had paid the premium up to the 29th day of May, 1926; the answer denied the balance of the complaint and set up as a further defense that the company terminated the policy on the 29th day of May, 1926, and that upon the appointment of the receiver all protection and benefits which the defendants were to receive under the policy terminated.

There is no material dispute in the evidence. The company was duly authorized to carry on its business in this state; the policy was issued by the company to the defendants for the year 1926, at their request, with the premium based upon the defendants' pay roll. The premium was paid until May 29, 1926, the date of the appointment of the receiver. The receiver, shortly after his appointment, notified the defendants of the fact, and further, as follows: "No insurance written by the Integrity Mutual Casualty Company is in effect after the appointment of the receiver, and this notification is sent to you so that, if you have not already done so, you may immediately take steps to secure proper coverage of insurance in place of policies, etc."

There was also introduced in evidence the application, the policy and the by-laws of the company. The plaintiff also submitted evidence showing that on May 29, 1926, the Integrity Mutual Casualty Company was insolvent to the extent that, if all out-

standing premium accounts and all other assets of the company were realized upon in full, there would still be a deficiency as to all creditors of over a million dollars. The defendants objected to all of this evidence regarding insolvency upon the grounds that it was incompetent, irrelevant, and immaterial. This objection raises the first issue for our determination. The trial court admitted the evidence over the objection, but made no finding as to insolvency, and ultimately held in favor of the defendants.

The respondents first contend that the complaint failed to allege the insolvency of the company, and for this reason the evidence regarding insolvency was incompetent, could not be considered by the trial court, and would not sustain a finding of insolvency. We are unable to agree with this contention of the respondent. The complaint, in the first instance, simply stated a cause of action to recover the balance alleged to be due upon a liability insurance premium upon a policy issued by a mutual casualty insurance company, which premium, it is alleged, the defendants had agreed to pay. The answer admitted the payment of a portion of the premium, and by way of an affirmative defense alleged that the policy had been terminated by the company, and that upon the appointment of the receiver, as disclosed in the complaint, all protection and benefits which defendants were to receive under said policy terminated, and the policy was thereby terminated, and the defendants were not liable for any further payment. In this state of the pleadings, we are of the opinion that, should the insolvency of the company become material in view of this affirmative defense, under our Code practice, no reply being necessary unless a counterclaim is pleaded (section 2372, Rev. Code 1919; Koester v. Port Huron Co., 24 S. D. 546, 124 N. W. 740; Bennett v. Campbell, 48 S. D. 285, 204 N. W. 177; Board of Ed. v. Whisman, 56 S. D. 472, 229 N. W. 522), evidence of insolvency would be competent and within the issues raised by the pleadings.

Was the evidence of insolvency material in view of the affirmative defense? The correct answer to this question, in our opinion, depends upon whether or not the Integrity Mutual Casualty Company was a mutual company. The by-laws and articles of association, among other things, provided as follows:

"Every policy-holder shall be a member of the corporation during the period for which his policy is in force and effect and,

while such member, shall be entitled to vote at all meetings of members in such manner as shall be provided in the by-laws.

"No member shall be liable for any obligation of the corporation except to the extent of the premiums expressed in his policy.

"The board (of directors) may from time to time at its discretion, distribute any part of the gains and savings of the business among the members of the corporation in such manner and to such extent as it may deem advisable."

 By these articles of association and the by-laws each policy holder becomes a member of the corporation, and to that extent acts as both insurer and insured. It is contemplated that the premiums paid by the members and the surplus and reserve, if any, constitute the fund from which losses and expenses are paid. Each policyholder is entitled to his voice in the meetings of the company and to share in the profits as determined by the board of directors, whom he may have a voice in electing. These facts determine that this is a mutual company. Rosebraugh v. Tigard, 120 Or. 411, 252 P. 75; 32 C. J. 1018. The respondent contends that because this policy was not subject to assessment, but provides for the payment of a cash premium, that the company loses its identity as a mutual company. This fact, however, is not contrary to mutual insurance. Davis v. Oshkosh Upholstery Co., 82 Wis. 488, 52 N. W. 771; Given v. Rettew, 162 Pa. 638, 29 A. 703. Respondents further contend, in this connection, that the articles of association contained a provision authorizing a cash premium policy, such as was issued to these defendants, which makes this company not a mutual company in fact; the provision is as follows: "Policies may be issued for a 'Cash Premium' or for a 'Cash Premium' and an additional 'Contingent Premium' but no policy shall be issued for a 'Cash Premium' without an additional 'Contingent Premium' until and unless the corporation is possessed of a surplus of at least One Hundred Thousand Dollars ($100,000.00) which surplus shall not be less in amount than the capital stock required of domestic stock companies transacting the same kind of insurance."

Section 10 of chapter 267, Session Laws 1921, in part provides as follows: " * * * Such mutual company may issue a policy without a contingent premium while it has a surplus equal to the capital required of a domestic stock insurance company

transacting the same kinds of insurance, and in no event shall the holder of any such policy be liable for a greater amount than the premium or premium deposit expressed in the policy."

This statute expressly authorizes a mutual company to do the very thing which it has done by the above-quoted provision of the articles of association, and when the requirements of the statute are met, the liability of a policyholder is limited to the amount of his premium or premium deposit. We therefore cannot agree with respondents' contention, that this provision renders the company not a mutual company in fact.

The company being a mutual company, was the evidence of insolvency material in view of the affirmative defense pleaded? The first defense, as proved, was that the receiver, after his appointment, notified the defendants that their policy was canceled. The receiver was appointed on the 29th day of May, 1926; the evidence of insolvency related to this date. The rule is well established that a policy of insurance in a mutual company cannot be canceled after insolvency and thereby relieve the policyholder from liability to which he was subject had the policy not been canceled. Sterling v. Ins. Co., 32 Pa. 75, 72 Am. Dec. 733; Doane v. Ins. Co., 43 N. J. Eq. 522, 11 A. 739; Cumings v. Sawyer, 117 Mass. 30; St. Louis Mut. Fire & Marine Ins Co. v. Boeckler, 19 Mo. 135; Hyde v. Lynde, 4 N. Y. 387.

There is the further defense raised by the answer that, upon the appointment of the receiver, all protection and benefits which respondents were to receive under the policy of insurance terminated, and that therefore they are liable for no unearned portion of the premium accruing after the appointment of the receiver. That the facts are clear, we will again point out, that the respondents had agreed to pay the whole premium for the year 1926 to be determined by the pay roll, they paid the premium earned up until the time of the appointment of the receiver, and this action is brought to recover the unearned premium accruing from that time until the end of the calendar year. Again, the insolvency of the company becomes material. As was said in the case of Gleason v. Insurance Co., 127 Tenn. 8, 151 S. W. 1030: "Companies organized upon the plan of this one (mutual company) have no capital stock. The cash paid in for premiums and the premium notes constitute their assets, and the policy holders

or members sustain a relation to the company very similar to that of stock holders. They can no more recover premiums paid in, nor avoid premium notes, in case of insolvency, than could stock holders in an ordinary corporation recover money paid in subscription to stock, or avoid notes given for subscription to stock. So, the insolvency of a company like this gives no right to a policy holder to recover any premium paid, or to avoid the payment of any premium note, so long as the company has outstanding debts." See, also, Carey v. Nagle, 5 Fed. Cas. 60. No. 2403; Corey v. Sherman, 96 Iowa 114, 64 N. W. 828, 32 L. R. A. 514; Howard v. Palmer, 64 Me. 86; Commonwealth v. Massachusetts Mut. Fire Ins. Co., 112 Mass. 116; Nichol v. Murphy, 145 Mich. 424, 108 N. W. 704; Vanatta v. New Jersey Mut. Life Ins. Co., 31 N. J. Eq. 15; Conigland v. North Carolina Mut. Life Ins. Co., 62 N. C. 341, 98 Am. Dec. 89; Sterling v. Mercantile Mut. Ins. Co. of Philadelphia, 32 Pa. 75, 72 Am. Dec. 773; Johnson v. House, 131 Ark. 113, 198 S. W. 876.

In this case the premium to be paid was for the whole calendar year; the only reason the premium was not paid in its entirety when the policy was issued was because the amount could not be accurately determined at that time. The amount of the premium was dependent upon the pay roll of the defendants, but the premium agreed to be paid was to be for the entire year, which brings the case entirely within the holdings last above cited. Thus, in the case of Illinois Coal Operators Mutual Employers' Liability Insurance Co. v. Chicago, etc., Coal Co., 217 Ill. App. 625, wherein a policy of employers' liability insurance was involved, and the premium was to be determined by the pay roll of the insured during the time the policy was in force, the court held that the promise of a person, who becomes a member of a mutual employers' liability insurance company, to pay premiums for one year constitute his contribution to the company's capital, and he is liable to the full amount thereof, where it is necessary to pay creditors, and cannot avoid payment of the remainder of the premium by securing the cancellation of the policy. The statute referred to in this Illinois case amply confirms the general rule that premiums paid by members of a mutual insurance company constitute in effect the capital of the company. The defendants, being members of this mutual company, and the company becoming insolvent, are

liable for the entire amount of the premium they agreed to pay, even if benefits under the policy were terminated by insolvency. The promise of these defendants to pay the premium for the entire year of 1926 constituted their contribution to the assets of the company of which they were members, and is subject to the payment of company debts the same as other company assets.

The judgment and order appealed from are reversed. Although evidence was received on the issue of insolvency, and it was, as we have held, sufficiently pleaded by force of statute and a material issue, the trial court made no finding either way thereon. The cause is remanded, with directions to the trial court to amend his findings by making, upon the record before him a finding as he shall be advised on the insolvency issue, and upon the findings, as so amended, to enter conclusions and judgment in harmony with the views of the law hereinbefore set forth.

CAMPBELL, P. J., and POLLEY and WARREN, JJ., concur.

ROBERTS, J., absent and not sitting.