## MAINE MUTUAL MARINE INSURANCE COMPANY *vs.* GEORGE C. PICKERING.

### Penobscot, 1876.—January 11, 1877.

#### *Promissory notes.*

It is not competent for the trustees of a mutual insurance company, which by virtue of a provision in its charter, has received the promissory notes of individuals for the security of those concerned in lieu of a capital stock, to surrender such notes at the request of the promisors, upon no consideration except the agreement of such promisors to claim nothing of the company for their use, when they are needed for the payment of the debts of the company.

Such a transaction would be a violation of the plain intent of the legislature in the grant of the charter, and a fraud upon the creditors of the company; and until the accumulated net profits of the company are equal to the amount of such notes, that is required by the charter before the company is allowed to commence business, it is not valid under a by-law of the company which allows the surrender of such notes, when the interest of the company requires it, and the safety of the company allows it.

On report.

Assumpsit. The defendant signed the agreement head-noted in the case of the same plaintiffs against Hodgkins, *ante* p. 109, and also the same note on which this action is brought. After the evidence was out, the case was reported to the full court for such judgment as the legal rights of the parties require. The facts appear in the opinion.

*C. P. Stetson*, for the plaintiffs.

The note in suit is of same character as the one in *Howard* v. *Palmer*, 64 Maine, 86.

The only difference in the cases is, that the trustees voted to surrender Pickering's note to him, but rescinded the vote before its surrender.

This does not relieve Pickering from his liability to pay the note. *Brown* v. *Appleby*, 1 Sandf. (N. Y.) 170. *Brown* v. *Hill*, 1 Sandf. (N. Y.) 629. *Tuckerman* a. *Brown*, 33 N. Y. 308.

*F. A. Wilson & C. F. Woodard*, for the defendant.

Barrows, J. The defendant was one of the signers of the original agreement, which resulted in the formation of the plaintiff corporation; he was one of the original trustees named in the charter, and one of the directors, until the close of the year 1871.

He gave the note in suit, and took out an open policy in January, 1871, in place of a similar note and policy made and issued in the previous year, under § 9, of the charter, "for the better security of those concerned." The liability thereby incurred has been fully considered by this court, and discussed at large in *Howard* v. *Palmer*, 64 Maine, 86; *Same* v. *Hinkley & Egery Iron Co.*, id. 93; and *M. M. Ins. Co.* v. *Blunt*, id. 95. The defendant claims that his case is to be distinguished from these; because at a meeting held January 26, 1872, the trustees of the insurance company, upon a communication from himself and two others relative to the surrender of their notes for $1000 each, given for open policies, on which they had done no business, "Voted, that the aforesaid notes be delivered to the respective parties by the secretary, provided no claim is made by them on this company for their use."

The note was never in fact surrendered ; but has always remained in the same package with the other notes belonging to the insurance company in the custody of its secretary; and shortly after this vote was passed, at a meeting of the directors, April 5, 1872, it was formally rescinded ; and the vote of rescission was unanimously reiterated by the trustees in February, 1873, when the defendant made a demand upon them for the note.

If this transaction could be regarded as one which the parties to it might lawfully accomplish, it might well be doubted whether it would be complete so as to have the effect which the defendant claims for it, without an actual surrender of the note ; although such surrender was delayed by mere accident, until after the directors had rescinded the vote. But we cannot regard such a disposition of the assets of the company, as one which it was competent for the trustees to make, to the injury of its creditors. The notes given as this was, by the projectors of the enterprise, were in lieu of capital stock for the company ; and must be regarded as a trust fund in the hands of the company, "for the better security of those concerned." That such was the design of the legislature is evident from an examination of the act of incorporation.

It is well said in *Howard* v. *Palmer, ubi supra*: "It would be in direct violation of the legislative intention, and a gross fraud upon the dealers, creditors of the company, to hold that the notes and securities, upon the basis of which the public were induced to give it credit and transact business with it, were utterly void, or available only to the extent of the actual insurances indorsed on the open policies of the company." It would be equally so to hold that the managers of the company might consent to the withdrawal of all or any portion of its capital, which is necessary for the payment of its debts, upon the futile consideration that no claim should be made upon the company for its use. By § 15, of the act of incorporation ; it appears that it was not until the net profits of the company should exceed fifty thousand dollars, that any portion of them could be applied to the redemption of the yearly certificates issued under § 12, to those who embarked their capital, or more properly speaking their credit, in the risk; and until that time those certificates were to be subject to any future

losses of the company. If the net annual profits were thus to be withheld until the happening of a contingency which apparently never occurred during the brief business existence of this corporation, surely the legislature did not contemplate the diminution of its assets and capital in the mode which the defendant proposes.

Counsel for defendant urge that the case differs from the New York cases cited for plaintiff by reason of the existence of § 7, of the by-laws adopted by the corporation.

Again we quote the apt and forcible language of the opinion in *Howard* v. *Palmer*: "The notes, by the seventh by-law, are not to be given up; unless the interest of the company requires it, and the safety of the company allows it. The interest of the company requires integrity. The safety of the company consists in its solvency. The surrender of its assets is alike at variance with its integrity and its solvency. If, by its misfortunes, it has ceased to be solvent; it can still remain honest."

In the condition of things here disclosed, the trustees of the corporation could not lawfully surrender the defendant's note, to the detriment of its creditors.            *Defendant defaulted.*

APPLETON, C. J., WALTON, DICKERSON and VIRGIN, JJ., concurred.