## Akers, Receiver, *versus* Hite et al.

1. A policy of insurance and the premium note given therefor constitute a contract between the insurance company and the insured, and the parties usually have the same power to rescind it by mutual agreement as they had to make it.

2. The right of the company to cancel policies and thus terminate the contract, for various acts of the insured, though such right be not expressly reserved, has constantly been recognised.

3. An agreement in good faith between the parties to a contract of insurance, to annul said contract, is valid.

4. Where the insured surrenders his policy, and it is agreed by the company that it shall be cancelled, the insured, from that time, ceases to be a member, and although liable to assessments, which accrued while he was a member, is not liable for debts contracted after the surrender of his policy.

May 11th 1880.   Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   SHARSWOOD, C. J., and GREEN, J., absent.

Error to the Court of Common Pleas of *Bedford county:* Of May Term 1880, No. 105.

These were three actions of debt brought by J. C. Akers, receiver of the Union Horse Insurance Company, of Blair county, against Albert Hite, Joseph Brunner and John Dicken, for the recovery of two assessments on premium notes, made for the purpose of paying off the indebtedness of the company.   One assessment of three per cent. on premium notes in the hands of the company was made by the directors January 1st 1878, and one of fifteen per cent. was made by the receiver of said company March 29th 1878.   The company was chartered June 17th 1872, by the Court of Common Pleas of Blair county, under the Act of Assembly of March 26th 1867, and conducted its business on the mutual plan.   The value of each animal insured was considered capital stock, and was, in case of loss, subject to assessment.

On the 5th of November 1874, John Dicken insured four horses for the period of five years, to the value of $525, and deposited his note with the company, whereby he agreed to pay within ten days next, after notice to the said company, or order, all taxes which may be assessed on the above-named. insured horses, for making good, and to satisfy all losses which may occur between the 5th November 1874, and the 5th November 1879.   Joseph

M. Brunner insured two horses to the amount of $275 for five years, from the 6th October 1874, and Albert Hite insured two horses to the amount of $200 for five years, from the 6th October 1874. Both gave the same kind of deposit notes as Dicken. In 1876 and 1877 the company, from numerous and severe losses, became heavily involved, and judgments to a large amount were entered against it. A great many members became dissatisfied with the management of the company, and the directors, on the 20th of October 1876, passed a resolution " to allow all dissatisfied members to withdraw from the company after paying all assessments or dues if their policies are handed to the directors." And again on April 3d 1877, passed another resolution : " In accordance with the resolution passed on the ' 20th of October 1876,' that the officers of the company shall cancel all policies of persons who have paid all their just dues to the company, or shall pay them within thirty days after due notice has been given to them, provided such persons wish to withdraw from the company, in all cases when a policy is cancelled, the secretary shall return the application on which the policy was granted, with as little delay as possible, to the person who made the application." Numerous parties availed themselves of this opportunity, surrendered their policies to the company, and had them cancelled. These three defendants, Hite, Dicken and Brunner, handed their policies to Samuel Whip, one of the directors, with the request to have them returned to the company. Whip gave them to the secretary of the company, J. Z. Smith, who accepted them and told Whip if everything was right he would lay them before the board, and, if cancelled, would send defendants their premium notes. On investigation, the secretary discovered that, on previous assessments made, Hite was owing to the company $1.50, Dicken $4.58 ; and these three policies were not cancelled by the company, but treated in the books of the company as still in force ; and, in January 1878, when the secretary made out the assessment lists he assessed these three parties and charged them with the amount of their assessment. Meanwhile the company became more and more involved, judgment-creditors issued execution, and, after due process of law, J. C. Akers was appointed receiver of the company, the officers of the company surrendering to him on request all goods and chattels and all the assets consisting of premium notes. Not having any cash assets wherewith to pay the debts, and not being able to ascertain the indebtedness of the company or the amount of premium notes which were still in force and uncancelled, the receiver, by direction of the Court of Common Pleas of Blair county, laid an assessment of fifteen per cent. on all premium notes in his possession and was directed to collect this amount, and also an assessment of three per cent., laid by the directors January 1878, but still uncollected.

[Akers *v.* Hite.]

The indebtedness of the company was, in April 1877, so large that it would have required an assessment on all premium notes of 12 per cent. to cancel all liabilities. These three cases, by direction of the Court of Common Pleas of Bedford county, being of a like character, were directed to be tried together, and the jury found a special verdict, which set forth, substantially, the above facts, and concluded as follows:

" That the jury are ignorant, in point of law, upon which side they might, upon these facts, find the issue. That if, upon the whole matter, the court shall be of opinion that the issue is found for the plaintiffs, they find for the plaintiffs accordingly, and assess the damages in favor of the plaintiffs against the defendants. Albert Hite, $24; J. M. Brunner, $33; John Dicken, $69. But if the court is of a contrary opinion, then they find *vice versa.*"

After argument, the court entered judgment for the defendants on the special verdict, when the receiver took this writ and assigned this action for error.

*Frederick Jaekel* and *J. M. Reynolds*, for plaintiff in error.— The board of directors of a mutual insurance company have no authority to pass a resolution to cancel the policies of dissatisfied members without paying existing debts: Maine Mutual Ins. Co., 66 Me. 130. As long as the insured are members to the extent of their notes they are liable to pay a pro rata share of the losses: Rhinehart *v.* Allegheny County Mutual Ins. Co., 1 Barr 59. Neither the surrender, cancellation nor the expiration of the policy nor the insolvency of the company, releases the holder of a policy from his liability to assessments for losses which occur during his membership: May on Ins. 691; Wilson *v.* Trumbull Ins. Co., 7 Harris 372; Sterling *v.* Mercantile Mutual Ins. Co., 8 Casey 75. The mere handing of a policy by a member of a mutual insurance company to one of the directors, with the request to have it cancelled, is not such an action as would, in the eyes of the law, justify the surrender of the premium notes. While in the sense of the contract the company and each member stand to each other in the relation of insurer and insured, both parties had to agree as to a cancellation of a contract entered into. As defendants did not tender their dues the directors were justified in not cancelling their policies. They are not relieved from paying their pro rata of the losses until the company cancels their policies and surrenders their notes. Their membership is not terminated by a notice to the agent of the company: Buckley *v.* Columbia Ins. Co., 2 Norris 294. Each member is liable to assessment while his policy remains uncancelled, although he has no right to recover thereunder: Upton *v.* Hornbraugh, 3 Bissell 417; Ins. Co. *v.* Connor, 5 Harris 136. The receiver was legally appointed; is the officer of the court; is appointed for the benefit of all parties concerned, and is

[Akers *v.* Hite.]

bound· by the charter of the company to the same extent as the directors : Daniel's Chancery Practice 1714 ; Sulfield *v.* People, 85 Ill. 558 ; Yeager *v.* Wallace 8 Wright 294 ; Singerly *v.* Fox, 25 P. F. Smith 112.

*John Cessna, Alexander King* and *J. B. Cessna,* for defendants in error.—The facts as found in the special verdict, in law amounted to a cancellation of defendant's policies, by virtue of which their membership was dissolved, and the defendants released from further claims, both for past and future losses, the same being an adjustment of mutual claims.   It is clear, that the plaintiff's company authorized the cancellation of policies of dissatisfied members upon certain conditions, and that those conditions were complied with on the part of the defendants.   By the resolutions of the company, the defendants were required to pay only their just dues or assessments.   This they did.   Two of them had been assessed upon horses which died or were sold more than a year previous.   This was illegal, as is fully established : Wilson *v.* Trumbull Mutual Ins. Co., 7 Harris 372 ; Columbia Ins. Co. *v.* Buckley, 2 Norris 372 ; Finley *v.* Lycoming Ins. Co., 6 Casey 311. These assessments being illegal, were not just.

The agreement to cancel policies and surrender notes to defendants was a legal contract so far consummated on part of defendants as to discharge their liability upon their notes.   It was in law a cancellation : May on Insurance, 690–1 ; Roland *v.* Whitman, Receiver Mutual Ins. Co., 33 Ind. 64 ; Sands, Receiver, *v.* Hill, 55 N. Y. (reversing 42 Barb. 651) ; Columbia Insurance Company *v.* Masonheimer, 26 P. F. Smith 138 ; Cumberland Valley Mutual Protection Company *v.* Herbert, 2 W. N. C. 155 ; Campbell, Receiver, *v.* Adams, 38 Barb. 132 ; Hyde *v.* Snyder, 4 N. Y. 387 ; Woodworth *v.* Davis, Receiver, 13 Ohio 123.   The company retaining the policies and the money, the defendants had a right to suppose that their policies were cancelled.   The plaintiff's company having accepted the payment made by them, promised to cancel their policies without any conditions or reservations.   If there was any mistake or legal objection to the cancellation, it was the duty of plaintiff to so notify the defendants.   This they did not do, and retaining the money and policies upon promise to cancel waived all objections if any existed. If defendants had sustained a loss, they would soon have been told, " you have surrendered your policy.   It is cancelled.   We will pay you nothing."

The directors had ample power to make the contract, which they did.   What they did by virtue of the charter itself is binding on all the members of said company.   Their action in passing the resolutions referred to, comes within the management of the affairs and business of the company, and is therefore binding on all its

[Akers *v.* Hite.]

members. The appointment of the receiver only passed to him the assets of the corporation, not its franchises. Not having the power to do any corporate act, his attempted assessments are void, and therefore cannot be recovered: Schimpf *v.* Lehigh Valley Mutual Insurance Co., 5 Norris 373. These principles are clearly established by the decision of Judge Blodgett, United States District Court, Cincinnati, delivered December 24th 1879, in case of Cook, assignee of the Protective Life Insurance Company.

Mr. Justice TRUNKEY delivered the opinion of the court, May 31st 1880.

The business of an insurance company, whether conducted on the mutual or stock plan, is managed by its officers and agents, and the corporators are bound by the acts of such agents in all matters properly done within the scope of the powers committed to them. A policy of insurance and the premium note given therefor, constitute a contract between the company and the insured, and the parties usually have the same power to rescind it by mutual agreement as they had to make it. Such a power on the part of the company seems essentially necessary to the safe and proper transaction of its business: Roland *v.* Whitman, Receiver, 33 Ind. 64; Woodwarth *v.* Davis, Receiver, 13 Ohio St. 123. Most mutual companies insert stipulations in their policies that they shall become void, either *ipso facto*, or at the option of the company, for certain acts of omission or commission by the insured, and when avoided, the rights and liabilities of the member are ended, except his liability for debts already incurred: Columbia Ins. Co. *v.* Masonheimer, 26 P. F. Smith 138; Wilson *v.* Trumbull Ins. Co., 7 Harris 372. The right of the company to cancel policies and thus terminate the contract, for various acts of the insured, though such right be not expressly reserved, has constantly been recognised, and it would be strange if it could not agree with the insured to abrogate the contract when deemed expedient or advantageous.

It is contended by plaintiff that it is not competent for the directors of a mutual insurance company to surrender the premium notes and relieve the insured from the obligations of his contract, unless the latter has paid his full proportion of all debts existing at the time of the surrender : citing Maine Mutual Ins. Co. *v.* Pickering, 66 Me. 130. In that case the note was given in pursuance of a section of the charter of the company, for security of those concerned, and is not like the case of a note given in the contract of insurance. In one sense the latter is a security, but it may be given up for good consideration. Thus, when the assured surrendered his policy and received from the secretary of the company his deposit note, there being contested claims which were

[Akers *v.* Hite.]

subsequently established and on which he paid nothing, and afterwards a receiver was appointed who made an assessment on the said assured for payment of said losses, it was held that the matter had been adjusted between the company and the assured, and the receiver could not impeach or disaffirm the lawful acts of the corporation : Hyde, Receiver of the Chenango Mutual Ins. Co., *v.* Snyder, 4 N. Y. 387. After the filing of a petition by a mutual insurance company, but before publication of the appointment of a receiver, the maker of a premium note paid an assessment thereon and surrendered his policy, under an agreement with an authorized agent of the company that such payment and surrender should be in full of said note, which was agreed to be given up, but was not; the note was extinguished and the receiver could not maintain an action thereon : Sands, Receiver of the Columbia Ins. Co., *v.* Hill, 55 N. Y. 18. A good faith agreement, between the parties in a contract of insurance, to annul it, is valid.

Every person insured in the Union Horse Insurance Company of Blair county became a member of the corporation, entitled to the rights and subject to the liabilities of a stockholder. The value of the property insured was the amount of his capital stock, and he was liable to assessment for payment of losses occurring during the time of his membership. When, for any cause, he ceased to be a member, he would not be liable for future debts, but could afterwards be assessed for payment of debts made while he was a member, unless he had duly settled with the company. Section 3 of the charter provides, that all affairs of the company shall be managed and controlled by a board of directors. The verdict shows that in pursuance of resolutions of the board, the defendants paid all their just dues, as assessed against them, and handed their policies to one of the directors to return to the company to be cancelled ; that they were so returned, and said board promised to cancel them and return the stock notes as soon as the secretary had time ; that the assessment laid by the directors, being the just dues so paid by defendants, was insufficient to pay the liabilities then existing ; that said policies were not in fact cancelled, and said notes came into the hands of the receiver who laid the assessments in suit ; and that under said resolutions the directors cancelled the principal part of the capital stock.

It is plain that the parties agreed to rescind the contract of insurance, and, accordingly, the defendants paid their money and surrendered their policies. They were bound by this agreement as if the policies had been marked cancelled and the notes given up. From thence the defendants had no insurance, they were not members, nor were they liable on the notes. The plaintiff has no more right to collect assessments on these notes than on those which had been actually returned on like terms. This case must be disposed of on the facts in the verdict, not outside. Whether

[Akers *v.* Hite.]

there are facts which would make all, who were once members, liable to assessment for indebtedness created before the cancellation of their contracts, does not appear—they are not in the verdict. For aught that is found the directors acted in good faith, and did what they deemed for the interest of the company. It would be as just to assess the large number who got back their notes, as the few to whom the secretary neglected to return their notes, as the directors promised he should do.

Judgment affirmed.