Frank B. Stockley, Receiver of the People's Mutual Live Stock Insurance Company of Pennsylvania, Appellant, *v.* Max Riebenack.

*Mutual insurance company—Liability of withdrawing member.*

An agreement by one insured in a mutual company expressed in the policy, to pay an assessment levied for mortuary or expense funds, imposes a liability to pay a proportionate share of all losses and expenses incurred up to the time of the surrender of his policy.

*Conclusive assessments—Claim for proportion of losses—Defenses.*

Assessments levied by the court, after the appointment of a receiver of a mutual insurance company, are conclusive both as to their necessity and amount and cannot be questioned in either respect in a collateral proceeding to recover same from a policy holder whose duty it is to pay to the company the proportionate share of losses incurred up to the time of his withdrawal.

*Affidavit of defense—Withdrawing policy holder—Sufficient allegations of payment of assessments.*

An affidavit which alleges that a member of a mutual insurance company surrendered his policies on a certain date and at the same time paid all indebtedness to date is insufficient, in that it does not state how much was paid nor the manner of payment. It merely expresses a legal conclusion from facts not disclosed.

Argued Oct. 10, 1899. Appeal, No. 118, Oct. T., 1899, by plaintiff, from order of C. P. No. 4, Phila. Co., March T., 1899, No. 854, discharging rule for judgment for want of a sufficient affidavit of defense. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by BEEBER, J.

Rule for judgment for want of a sufficient affidavit of defense. Before the court in banc.

It appears from the record that defendant was a member of the People's Mutual Live Stock Insurance Company of Pennsylvania prior to its insolvency, holding three policies therein, each of which contained the following provisions :

"Seventh. The insured agrees to pay any assessment that may be levied upon him from time to time for the mortuary or expense funds, and within the time provided for in the notice of assessment."

"Twelfth. The insured may discontinue this policy at any time, by giving written notice thereof to the secretary of the company and surrendering the policy for cancellation and at the same time paying all indebtedness to date."

On March 2, 1898, said defendant gave notice to said company to cancel said policies, which were surrendered by him, and at the same time he paid to said company a sum which it demanded and was thereupon informed by the company that the said cancelation and payment was a full and complete release.　On May 2, 1898, the court of common pleas of Dauphin county adjudged the said company insolvent and appointed Frank B. Stockley, Esquire, receiver.　At that time there were 130 losses, running from April 1, 1897 to April 30, 1898, which had not been paid by the company, 109 of which occurred prior to the date of the cancelation of defendant's policies.　There being no tangible assets of the company, the said court directed the receiver to levy an assessment against the policies in force on the dates of the respective losses, and under said decree, the defendant's policies were assessed $137.01, for the 109 losses which still remain unpaid, and which occurred prior to the cancelation thereof, on March 2, 1898.　Notice of said assessment was given to said defendant and upon his failure to pay suit was brought in the court below.　The affidavit of defense set up a release by virtue of the compliance on the part of the defendant with the provisions of the twelfth section of the policy, and a rule for judgment for want of a sufficient affidavit of defense was discharged by the court, from which decision this appeal was taken.

The affidavit of defense filed in this case was as follows :

Max Riebenack the abovered named defendant being duly sworn in accordance with law, deposes and says that he has a just, true and legal defense to the plaintiff's claim in the above

suit which he expects to prove on the trial of the cause, as follows:

One of the articles contained in the policies of insurance issued by the People's Mutual Live Stock Insurance Company to this defendant upon the horses insured in said company, which was part of the contract and agreement between said company and this defendant, is as follows, viz: "Twelfth. The insured may discontinue this policy at any time by giving written notice thereof to the secretary of the company and surrendering the policy for cancellation and at the same time paying all indebtedness to date."

In accordance with the provisions of said article and in pursuance of the understanding and agreement of this defendant with said company at the time of his acceptance of said policies of insurance, this defendant being desirous of discontinuing said policies gave proper notice thereof in accordance with said article, surrendered said policies of insurance to said company, which were duly canceled by the proper officers thereof and at the same time paid all indebtedness to date, to wit: March 2, 1898, whereupon he was notified and informed by said company, through its duly constituted officers, that said cancelation and payment aforesaid was a full and complete release of all claims which said company had or might have against him, and in consideration thereof he was released from all further liability to said company in accordance with the conditions of said policies and the laws and rules of said company.

The court discharged the rule for judgment for want of a sufficient affidavit of defense. Plaintiff appealed.

*Error assigned* among others was discharging the rule for judgment for want of a sufficient affidavit of defense.

*E. Cooper Shapley,* for appellant.—The decision should be reversed because (1) the defendant does not deny that the losses for which he is assessed occurred during the time of his membership. (2) Defendant does not deny that the losses for which the assessment is made are liabilities of the company. (3) The defendant is assessed only for those losses still remaining unpaid, which occurred prior to the cancelation of his policies, to wit: prior to March 2, 1898. (4) The whole defense

is that defendant discontinued his membership on March 2, 1898, and paid all assessments demanded of him. Doane v. Ins. Co., 43 N. J. Eq. 522, is similar so far as assessment and cancelation are concerned to the case at bar. See also Akers v. Hite, 94 Pa. 394, and Matten v. Lichtenwalner, 6 Pa. Superior Ct. 575.

In Ins. Co. v. Mardorf, 152 Pa. 22, the court held that a policy holder could be assessed after the expiration of his policy for losses which occurred before such expiration.

If the contention of the defendant in this case is correct, then a member who has paid all assessments levied against him by the company is not liable for the assessment in question, yet that is not the law. There are numerous decisions that members are liable to assessment for all debts and obligations contracted while their membership existed, but not for losses which happened before they became members or after their membership ceased : Orr v. Mercer County Ins. Co., 114 Pa. 387 ; People's Fire Ins. Co. v. Hartshorne, 90 Pa. 465 ; Akers, Receiver, v. Hite, 94 Pa. 394.

*Samuel P. Tull*, with him *Edwin Walton*, for appellee.—The law appears to be settled that one who has ceased to be a member of a mutual insurance company is not liable for debts arising after his membership ceased, but may be assessed for payment of debts made while he was a member, unless he had duly settled with the company : Akers v. Hite, 94 Pa. 399.

But the law appears to be just as well settled that one who has been a member of a mutual insurance company, and has duly withdrawn his membership, may be free from liability for assessments made after his withdrawal, to liquidate losses incurred during the life of his policy : Akers v. Hite, 94 Pa. 394 ; Matten v. Lichtenwalner, 6 Pa. Superior Ct. 575.

OPINION BY BEEBER, J., December 16, 1899 :

In the policies which the defendant secured from the plaintiff, he agreed, in the seventh clause indorsed' on them, to pay any assessment that might be levied upon them for the mortuary or expense funds. As this company was a mutual one, this clause must be held to mean that he agrees to incur the liability which the nature of the mutual company imposes on all its members. What that liability is will be found well stated

in People's Fire Ins. Co. v. Hartshorne, 90 Pa. 456, as follows : " The essential principle on which mutual companies are organized is that each member will pay his proportionate share of expenses incurred, and losses which happen during the period of his membership." The twelfth clause indorsed on the policies was intended to provide a method by which the defendant could surrender them and escape any further liability. It provided that the defendant could have his policies discontinued at any time upon notice and surrendering them, and " at the same time paying all indebtedness to date." Considering the nature and extent of his indebtedness as a member of a mutual insurance company, we are bound to conclude that this clause means that he must pay his proportionate share of all losses and expenses incurred up to the time of the surrender of the policies.

When the defendant wrote his affidavit of defense, he had before him the plaintiff's statement in which it appeared that the suit was brought to recover certain assessments, levied by a court of competent jurisdiction after the appointment of the receiver, to pay losses which occurred while he was a member of the company. He must be presumed to have known that, as these assessments sued for were levied by the court after the appointment of the receiver, they were conclusive both as to their necessity and amount and could not be questioned in either respect in this collateral proceeding: Fire Ins. Co. v. Boggs, 172 Pa. 91. Under the construction which we have given to the policy, it was his duty to pay his proportionate share of the losses which had occurred to the company up to the time of his withdrawal. That proportionate share was fixed as to the exact amount, by these assessments levied by the court two months after the surrender of the policies. The averments in the statement to the effect that these assessments were levied upon the defendant's policies to pay his share of the losses occurring while he was a member were vital and material to the plaintiff's case, and ought to have been denied in the affidavit if defendant intended to defend on the ground that they were not so levied. As he has not denied them, they must be taken as true. The only defense set up was that he has surrendered his policies on a certain date " and at the same time paid all indebtedness to date." It is not ne-

cessary to cite authorities to show that this averment of payment is not sufficiently precise and definite to prevent judgment. He does not say how much he paid, nor in what manner he paid. One who says in his affidavit that he has paid the debt, without more, simply expresses a legal conclusion from facts not disclosed. He should set forth the facts so that the court can tell whether he has paid. "It has never been held enough to prevent judgment, to say, 'I paid the debt,' or 'I do not owe the claim:'" Snyder v. Powers, 37 Leg. Int. 387.

We are not prepared to sustain the defendant's contention that a member of a mutual insurance company who "has duly withdrawn his membership may be free from liability for assessments made after his withdrawal to liquidate losses incurred during the life of his policy," but even if we did, we do not think that the record in this case shows it to be one to which such a rule applies. The cases relied on to establish this rule are Akers, Rec'r, v. Hite, 94 Pa. 394, and Matten, Rec'r, v. Lichtenwalner, 6 Pa. Superior. Ct. 575. In Akers v. Hite, it was said that contracts of insurance were like others in that they could be rescinded by mutual consent, and that many mutual insurance companies inserted stipulations in their policies that they should be void for certain acts of omission or commission by the insured, but it was added at the same time that "when avoided, the rights and liabilities of the member are ended, except his liability for debts already incurred." Whilst in that case it was held that the agreement between the insured and the company relieved the defendant from further assessment, even though it appeared that when the withdrawal took place he did not pay his full proportionate share of losses incurred at that time, the effect of the decision was limited to the facts found in the special verdict. The Court say: "This case must be disposed of on the facts in the verdict, not outside. Whether there are facts which make all who were once members liable to assessment for indebtedness created before the cancelation of their contracts, does not appear, they are not in the verdict." That the result would be different where it does appear that members are liable to assessment for indebtedness created before cancelation is evident from the case of Susquehanna Mut. F. Ins. Co. v. Mardorf, 152 Pa. 22, where it appeared that a suit had been brought, after the expiration of the

policy, to recover an assessment made after its expiration, in which a verdict had been rendered for the defendant. In a subsequent suit to recover still another assessment, made after the expiration of the policy, the court below held that the first suit was a final adjudication of all questions between the parties upon the application and policy in question. In reversing the court below it was said: "We are quite unable to agree to this doctrine. By the terms of the policy it was subject to assessment for all losses occurring while it was in force, whether they were made during its life or after it had expired. The first action was brought upon one assessment, made, it is true, after the policy expired, but only to recover the assessment made for losses then adjusted. Certainly this would not preclude subsequent assessments made to cover other losses not then adjusted, if they occurred during the life of the policy." By the construction we have put on the two clauses in this present policy it appears that this defendant was liable to assessment for indebtedness created before the cancelation. When it was canceled, it was in effect the same as an expired policy, liable to pay its share of losses up to date of cancelation, which had to be paid before defendant could be fully released, although of course he would have been released from liability for future losses from the date of the cancelation. Our own case of Matten v. Lichtenwalner, supra, is an authority against the defendant's contention that his withdrawal released him from liability for assessments made after his withdrawal to liquidate losses incurred during the life of his policy. In that case it appears that the only part of the charge of the court below objected to was as follows: "If you find that the proper authorities of the company did cancel her policy, then you will say that she is relieved from liability under its terms, provided it is proved by the defendant that all the losses that had occurred down to the date of that cancelation had been paid, i. e., realized by the company. When I say paid I do not mean that the company had actually passed the money over to the person or persons who had the loss, but that the company had realized from its members, including Mrs. Lichtenwalner, what they were bound to pay to satisfy all those losses. If the defendant has not shown that she, Mrs. Lichtenwalner, had paid to the company her share of all the losses that were incurred down to the period when

the policy was canceled, if it was canceled, then you will say that she still remained liable, notwithstanding the action of the directors in attempting to give her free and cancel her policy." It will be seen that the court below imposed on the defendant in that case the duty of proving, not what she had paid to the directors as fixed by them as a consideration for the withdrawal and cancelation, but that she had paid her share of all the losses that were incurred down to the period when the policy was canceled. This was the rule laid down by the court below which we approved. As we have said, that case is, in effect, a decision against the contention of the defendant in this case.

Judgment reversed, and record remitted to the court below, with direction to enter judgment against the defendant for such sum as to right and justice may belong, unless other legal or equitable cause be shown to the court below why such judgment should not be so entered.