## Commonwealth v. Yellow Cab Company of Allentown, Inc.

*E. Drummond King,* for Commonwealth.
*William N. Kanehann, Jr.,* for defendant.

SCHEIRER, J., December 28, 1965.—The Colonial Mutual Casualty Company, being insolvent, was dissolved on December 11, 1953, by order of the Court of Common Pleas of Dauphin County. Plaintiff, the Insurance Commissioner of the Commonwealth of Pennsylvania, was appointed receiver to liquidate its business.

On April 3, 1962, the Dauphin County Court ordered and decreed that all members and policyholders of the company, including defendant, pay an additional premium or assessment for the purpose of paying the losses of the company in an amount which "shall be the result of multiplying the total of the following monthly assessment factors (listed in the order) for

the months during which each policy was in force, by the premium written in the said policy, subject to the limitation that the additional premium or assessment shall not exceed an amount equal to the premium written in the said policy, and further, subject to the limitation that all members and policyholders be given credit for any payments made by them under the company's assessment of April 1, 1953 against any amount due under the assessment herewith ordered".

This action in assumpsit by the receiver is to recover from defendant policyholder an assessment determined by the factors appearing in the above order. Defendant admits coverage under two policies. The assessment of $243.56 on the policy providing coverage from August 31, 1950, to January 1, 1951, is not contested. However, the assessment of $2,545.90 on the policy affording coverage from January 1, 1951, to July 23, 1951, is contested. To arrive at an assessment of $2,545.90, the total of the assessment factors for each month the policy was in force (the receiver used the round figure of six months) was multiplied by the "premium written in the policy", $4,687.04, which was an annual premium. But the policy was cancelled by the company on July 23, 1951, and it is this circumstance which is the avenue of defendant's attack upon the assessment in its answer to plaintiff's complaint.

In paragraph 3 of the answer, defendant avers "that the plaintiff has miscalculated the assessment by applying to the assessment factor a period of coverage in excess of that which was correct under the policy", and in paragraph 4 it is averred "that the premium which has been set forth in plaintiff's complaint, and upon which the assessment factor is calculated, was an annual premium and the policy was cancelled by the company on July 23, 1951".

Defendant has also set up a counterclaim based upon a settlement of a personal injury and property claim

by a third party. The claim arose while the policy was in force. A suit on this claim was instituted subsequent to the insolvency of the insurance company and after defendant received notice that the company would not pay or defend.

Plaintiff filed preliminary objections alike to defendant's answer and counterclaim in the nature of a motion to strike and a demurrer. Plaintiff, as well, moved for judgment on the pleadings.

In the effort of a receiver to collect assessments upon policyholders in an insolvent mutual insurance company, it is immediately apparent that the right of defense thereto is narrowly limited.

"Assessments. The Court of Common Pleas of Dauphin County, in appointing a receiver, has authority to direct the receiver to levy an assessment to pay losses, and assessments made by the receiver under the decree are valid against policyholders. Assessments levied by the court after the appointment of the receiver are conclusive both as to their necessity and their amount, and cannot be questioned in either respect in any collateral or ancillary proceeding to recover the same from a policyholder whose duty it is to pay the company the proportionate share of the losses incurred up to the time of his withdrawal.

"While the order of the court concerning an assessment of the policyholders of an insolvent mutual insurance company is conclusive upon the validity, necessity and amount of an assessment of such policyholders, it does not touch the liability of the individual policyholders to pay. On defenses of an individual nature, a policyholder is entitled to a hearing, and the reasons for his defense which may be averred are those which are personal and peculiar to himself": 18 P. L. Encyc. §24, 463, §25, 465.

In Smith v. Sanft, 198 Pa. Superior Ct. 340, 181 A. 2d 685, the court said:

"It has long been settled that an assessment order against policyholders of a mutual insurance company by a court of competent jurisdiction may not be attacked collaterally in a subsequent action to collect the assessment (Cases cited.)".

Howsoever defendant states its position in its answer and in its brief, the nub of its argument is that plaintiff was in error in multiplying the total of the monthly assessment factors for the months during which the policy was in force by the "premium written in the policy". It is argued that plaintiff was limited to the multiplying figure of the pro rata premium, since the company cancelled the policy prior to the expiration of a full year of coverage. Defendant chooses to call the assessment a miscalculation. There is no mathematical error in the application of the factors set forth in the assessment order. The assessment is correct if the order embodies the proper factors, and if the order does not embody the proper factors, then defendant is collaterally attacking the validity of the order in this court. This it cannot do.

In Smith v. Sanft, supra, defendant, in a similar situation as defendant herein, sought only "to clear up an ambiguity" in the assessment order and avowedly not to collaterally attack the order. The question posed was: "Did the Court mean that the total of the assessment factors shall be multiplied by the cash premium actually stated in the policy or by a pro rata portion of that cash premium for the actual period the policy ran"? The court replied, ". . . when the court intends the monthly factors to be multiplied by the *annual* premium it knows how to say it, and when it intends the monthly factors to be multiplied by the *'cash premium stated in the policy'* it knows how to say that". It is of interest to note that in Smith, defendant was confronted by the multiplication of a "cash premium stated in the policy" for five years of

coverage, not one year as here. The five-year premium stated in the policy was applied.

It matters not at all that the company cancelled the policy rather than the insurance commissioner, as in Smith. It is the duty of the policyholder to pay his proportionate share of the company losses incurred up to the time of his withdrawal. The order takes into account the period of membership of the policyholder, and how he withdrew is immaterial.

Defendant's brief cites a line of cases relating to the rights of a policyholder to a return of a premium paid beyond the date of cancellation of a policy by the company. Such cases can have no application to a policyholder in an insolvent mutual company. Defendant's briefer concludes his argument on this point as follows: ". . . the action of the Company when permitted by the terms of the policy is a unilateral redetermination of the premium downward to that premium figured for the period between commencement of coverage and cancellation thereof". Defendant thus ignores the language of the order "the premium written in the said policy", which cannot be anything less, and as well the provision in defendant's standard policy, "The contingent liability of each assured (member) shall be limited to an amount equal to and in addition to the *premium stated in the policy*". (Italics supplied.) (Plaintiff's Exhibit "C".) The order of assessment adopts the very wording of the policy "premium written (stated) in the policy". As Judge Woodside commented in Smith v. Sanft, supra, "when it [the court] intends the monthly factors to be multiplied by the '*cash premium stated in the policy*' it knows how to state that".

Defendant, in its answer, admits the order of assessment, but attacks the calculation of the assessment therein because the period of coverage under the policy was curtailed by cancellation. That it cannot do under

the guise of a denial and demand of proof, for it clearly is collaterally attacking the validity of the order. Certairily, the "defense" is not of an individual nature as contemplated under the cases. In Backenstoe v. Kline, 31 Pa. Superior Ct. 268, 273, the court disposed of defendant's defense by saying:

"The defendant interposed no valid defenses which were personal to himself, such as that he was never a member of the company, or that he had paid his full share of the losses occurring while he was a member of the company to any person authorized to receive the same and release him from further obligation. A canceled policy is the same as an expired policy and is liable to pay its share of losses up to the date of cancellation: Stockley v. Schwerdfeger, supra; Matten v. Lichtenwalner, 6 Pa. Superior Ct. 575; Stockley v. Riebenack, 12 Pa. Superior Ct. 169; Schofield v. Leach, 15 Pa. Superior Ct. 354. See also Brown v. Spackman, 29 Pa. Superior Ct. 638".

Plaintiff's demurrer to defendant's answer must be sustained.

Defendant's counterclaim is an effort to set off against the assessment the amount of a settlement made of a claim against it which arose during the term of the policy. Plaintiff adequately and correctly supplies the response to this effort in his brief.

"The Counterclaim or setoff may not be raised in a suit for collection of the assessment. The practical reason for this is that the assured must share the same risk of recovery of his claim as any other assured or claimant of the dissolved insurance company. If this Defendant is permitted to setoff its claim, it will in effect get a 100% collection on its Counterclaim. If it made a claim to the Insurance Liquidator, it might obtain 100% or it might obtain 75% or some other figure. As a matter of policy, the Defendant may not improve his position at the expense of other creditors

of the insolvent company by raising his claim in a suit for assessment".

In addition, the Act of May 17, 1921, P. L. 789, art. V, sec. 502, as amended, 40 PS §202, applying to domestic insurance companies, provides in part: "From the date of such suspension on the ground that the suspended organization is insolvent . . . no action at law . . . shall be commenced or prosecuted . . . against the suspended company. . . ."

The common sense of treating an action upon an assessment differently than a claim against a dissolved company was early expressed in Hillier v. Allegheny County Mutual Insurance Company, 3 Pa. 470, 474, as follows:

"It is to be remembered that each sufferer is an insurer as well as a party insured; and that he is bound to make compensation, as well as entitled to receive it. But it is not perceived how the *pro tanto* amount of his loss should be ascertained before all the available securities of the company had been called in, and the demands upon it liquidated. The plain and practicable plan of settling the affairs of an insolvent company of mutual insurers is to liquidate its means and its responsibilities separately".

Plaintiff's demurrer to defendant's counterclaim will be sustained.

In view of our disposition of the matters before us by the allowance of the demurrers to defendant's answer and counterclaim, it will not be necessary to consider plaintiff's preliminary objections in the nature of motions to strike, nor the motion for judgment on the pleadings, which would appear to be premature at this pleading stage.

ORDER

Now, December 28, 1965, plaintiff's preliminary objections in the nature of motions to strike defendant's answer and counterclaim are dismissed, plain-

tiff's motion for judgment on the pleadings is denied, and plaintiff's preliminary objections in the nature of a demurrer to defendant's answer and counterclaim are sustained. Judgment is entered in favor of plaintiff and against defendant in the sum of $2,789.46, with interest from April 3, 1962.