Argued December 10, 1926, affirmed January 11, rehearing denied February 1, 1927.

# W. W. ROSEBRAUGH *v.* C. F. TIGARD ET AL.

### (252 Pac. 75.)

**Appeal and Error—Findings of Fact by Trial Court are Conclusive.**

1. Findings of fact by trial court have same force and effect as verdict of jury, and, in reviewing such findings, appellate court is not concerned with any conflict in testimony.

**Insurance—A "Mutual Insurance Association" is One in Which Members are Both Insurers and Insured.**

2. A "mutual insurance association" is one in which members are both insurers and insured, and in which premiums paid constitute a fund which is liable for losses and expenses, and where members share in profits in proportion to their interest and control and regulate affairs of association.

**Insurance—Mutual Association cannot Assert Forfeiture for Delinquency in Premium Payment, if, by Course of Dealing or Customs, It has Induced Honest Belief That Prompt Payment will not be Insisted upon.**

3. Insurer is precluded from asserting forfeiture for delinquency in payment of premium or assessment of mutual insurance association, where, by its course of dealing or its custom, it has induced honest belief on insured's part that prompt payment of assessment will not be insisted upon.

**Insurance—Authority of Local Insurance Agent to Extend Time for Premium Payments was Measured by What He was held Out to Members of Association as Having Authority to Do.**

4. Authority of local agent of mutual insurance company to extend time for payment of premium was not limited to by-laws of association, but was measured by what he was actually held out to members as having authority to do.

---

3. See 14 R. C. L. 1183, 1184.
4. See 14 R. C. L. 1158.

Insurance—Where Risk has Once Attached, and Insurer, Before Loss, Accepts Overdue Premiums, It Waives Right to Enforce Forfeiture for Delinquency.

5. Although prepayment of premium is usually condition precedent to attachment of risk, where risk has once attached, and insurer, before loss, accepts overdue premiums, he thereby waives right to enforce forfeiture by reason of delinquency in payments, and insured's rights are thereby completely restored.

Insurance—Waiver Results from Agreement to Extend Time for Payment of Premiums.

6. Waiver results when insurer agrees to extend time for payment of premiums on policy.

Insurance—Agreement of Member of Mutual Insurance Association to Pay All Assessments to Meet Losses and Expenses was Binding Obligation.

7. Agreement of member of mutual fire insurance association, in consideration of certificate of insurance on his property, to pay all assessments made upon him by directors of association to meet all losses that might occur and expenses of managing association, constituted binding obligation on insured to pay assessment.

Insurance—Evidence Held to Warrant Finding That Insurance Policy was in Full Force at Time of Loss and That Insured was not in Default in Payment of Assessment.

8. In suit on fire insurance policy issued by mutual association, evidence *held* to warrant finding that policy was in full force and effect at time of loss, and that insured was not in default in payment of assessment, where insurer's agent had extended time for payment of premium.

Insurance—Insured Held Entitled to Reasonable Attorney's Fee, in Action on Certificate of Insurance Issued by Mutual Insurance Association (Or. L., § 6355).

9. In action on certificate of insurance issued by mutual fire insurance association, plaintiff recovering on policy *held* entitled to reasonable attorney's fee, in view of Section 6355, Or. L.

Appeal and Error, 4 **C. J.**, p. 876, n. 78, p. 878, n. 82.
Fire Insurance, 26 **C. J.**, p. 60, n. 15, p. 118, n. 21, p. 119, n. 25, p. 283, n. 77, p. 327, n. 46, 49, 52, 53, p. 328, n. 55, 56, p. 329, n. 79, p. 538, n. 70.
Insurance, 32 **C. J.**, p. 1018, n. 41, p. 1019, n. 42, 43, 48, p. 1063, n. 98.

From Marion: PERCY R. KELLY, Judge.

Department 2.

This is an action on a policy or certificate of insurance, No. 104, in the sum of $2,500 on plaintiff's

6. See 14 **R. C. L.** 1183, 1184.

foundry and boiler works and office in Salem, Oregon. The certificate of insurance was issued by the Lower Columbia Fire Relief Association, a mutual insurance association, issuing policies only to the members of the patrons of husbandry, commonly called the Grange, of which plaintiff is a member. His application was approved and a policy issued April 29, 1919, dating from 12 o'clock noon on April 24, 1919, and expiring 12 o'clock noon April 24, 1924. About 7:30 P. M., June 24, 1922, the insured property was wholly destroyed by fire. The value of the property burned was greater than the amount of the insurance. The cause was tried by the court without the intervention of a jury. Findings of fact and conclusions of law were made and a judgment entered thereon in favor of plaintiff, from which judgment the defendants appealed.

In plaintiff's application for insurance on his property, which is dated April 23, 1913, there was a clause which reads as follows:

"In consideration of the advance payment, and the certificate to be obtained on the property named, I do hereby agree to pay all assessments made upon me by the directors of the Lower Columbia Fire Relief Association to meet all losses that may occur and the expense of maintaining the affairs of the association."

Section 1 of article XII of the constitution of the association is as follows:

"The board of directors shall have management of the affairs of the association, and be its authorized agents. They shall have power to accept or reject fire risks, to annul certificates, to adjust payments of losses and levy assessments to pay the same, to invest the funds of the association, and to transact all business for which the association is formed."

At the time of the issuance of certificate No. 104, until the sixth day of January, 1921, section 2 of article XII of the constitution provided as follows:

"The board of directors may annul any certificate for any of the following causes: * *

"(7) Where an assessment is not paid within 60 days after due notice has been given to the holder of a certificate."

At the date of the certificate section 34 of the by-laws of the association provided that "any person who fails to pay his assessment within 60 days after being notified, his insurance shall be null and void until such assessment is paid."

Section 30 of the by-laws provides that "the constitution and bylaws may be changed, altered or amended, or additions made thereto, by the board of directors at any regular meeting."

Section 12 of the by-laws, until January 6, 1921, provided as follows:

"After the loss has been adjusted, the secretary shall make the assessments as provided in Article 5 of these bylaws, and shall immediately notify each member of the amount of his assessment, which must be paid to the secretary within sixty days; and if such assessment is not paid, after notice by mail, in sixty days, an action may be brought therefor against such defaulting member, and this authorizes and empowers the President and his successor in office to bring such action in his name for the other members; and it is hereby agreed that in such action such defaulting party will not plead a non-joinder of parties, but permit judgment to be entered notwithstanding all parties are not joined in such action; and the failure, within the time specified to pay such assessment shall forfeit all claim of the member or members defaulting therein, and render his or their certificates null

and void, and they shall be prohibited from again becoming members of this association.''

On January 6, 1921, section 12 of the by-laws of the association were changed so as to read as follows: ''All assessments must be paid within ten days after the date when due, if not so paid the policy shall be null and void until paid.'' Section 34 of the by-laws was stricken out.

Section 2 of article XII of the constitution was also changed, so as to authorize the board of directors to annul any certificate where an assessment is not paid within ten days, after due notice.

Section 24 of the by-laws of the association provided as follows:

''The director of each district shall appoint for every Grange in the district an agent, to serve the current year, who shall be a member of the Grange, whose duty it shall be to receive applications for insurance within the jurisdiction of such Grange to which he belongs, 'and whose compensation shall be fixed by the Board of Directors.' All applications or changes desired in certificates shall be countersigned by the director of the district, and by him forwarded to the secretary.''

Section 25 of the by-laws thereof provided as follows:

''Agents shall be governed in the performance of their duties by the constitution and bylaws of the association, and by the instructions of the board of directors; and they shall be responsible to the director of the district for the careful and faithful performance of their duties, and may be removed by him at any time.''

About March 19, 1922, the directors made an assessment upon the plaintiff to be paid April 24, 1922.

The defendant's secretary thinks he sent the plaintiff a notice in writing of the amount about the twenty-fifth day of March, 1922, which stated in substance, if not paid within ten days after it was due his policy would be null and void until the assessment was paid; and that another notice was sent in April and another in May.

In June, 1922, before defendant knew of the fire, the secretary of the association notified the plaintiff in writing that his assessment was due on April 24, 1922, and called his attention to the by-laws.

After the fire plaintiff made his proof of loss and demanded payment of his insurance. Plaintiff alleges, and the proof tended to show, that R. R. Ryan, defendant's agent, granted him an extension of time of 90 days, in which to pay the assessment that was due April 24, 1922; that this was the custom and practice of this agent, which was known to and ratified by the defendant association. The plaintiff avers that the defendant should be estopped from alleging that plaintiff was delinquent in payment of his assessments at the time of the fire.

AFFIRMED.     REHEARING DENIED.

For appellants there was a brief and oral argument by *Mr. W. S. U'Ren.*

For respondent there was a brief over the name of *Mr. S. M. Endicott,* with oral arguments by *Mr. Walter C. Winslow* and *Mr. Roy F. Shields.*

BEAN, J.—1. There can be no contention in regard to the law in this state that in an action at law tried by the court without a jury, the findings of fact made by the trial court have the same force and effect as the verdict of a jury. Therefore, in regard to the

facts found in this case, we have only to inquire if there is any substantial evidence to support such findings. We are not concerned with any conflict in the testimony.

The Circuit Court found, among other facts, in substance as follows:

That on the twenty-eighth day of April, 1919, in consideration of plaintiff having become a member of said Lower Columbia Fire Relief Association, and having paid the sum of twenty-seven and 50/100 dollars to defendant J. J. McDonald, one of the directors of said association, and having bound himself to pay his ratable proportion of all assessments made for loss or damage by fire or lightning in accordance with the constitution and by-laws of said association, during continuance of said certificate, said defendant herein, namely, said Lower Columbia Fire Relief Association, issued to plaintiff its certain certificate of insurance No. 104, by the terms of which said Lower Columbia Fire Relief Association insured plaintiff against loss or damage by fire or lightning in the sum of $2,500 upon the following named property, to wit: $1,000 on foundry and boiler works; $1,200 on shafting; and $300 on office building; and by the terms of said certificate of insurance, said Lower Columbia Fire Relief Association promised and agreed to make good with plaintiff herein all such loss or damage, not exceeding the sum of $2,500, which should happen by fire to said property during the term of five years from the twenty-fourth day of April, 1919, at 12 o'clock noon, to the twenty-fourth day of April, 1924, at 12 o'clock noon, and that said loss should be paid to said plaintiff within sixty days after notice and proof should have been furnished

by plaintiff and received by said Lower Columbia Fire Relief Association:

That on the twenty-fourth day of June, 1922, all of the property covered by said certificate of insurance was totally destroyed by fire.

That thereafter plaintiff duly notified the association of the fire and furnished it due proof of loss in excess of the amount covered by the certificate.

That R. R. Ryan was the duly authorized and acting agent for the association in the Salem district where plaintiff's property was situated; that upon being notified by the association of the assessment, the failure to pay which is urged herein as a defense, plaintiff requested of R. R. Ryan an extension of time within which to pay the same; and an extension of ninety days within which to pay such assessment was thereupon granted by Ryan to plaintiff; that Ryan acted as agent for said association for a period of seven years, and prior to granting plaintiff such extension within which to pay his assessment, had granted many other members of the association holding certificates of insurance extensions of time within which to pay their assessments, with which course of dealing on Ryan's part plaintiff was familiar; that the association received and retained money paid pursuant to such extensions by its members and never took any affirmative action to suspend the certificate of any of such members during the interval covered by the extensions so granted by Ryan, and ratified the act of Ryan, its agent, in this regard; that plaintiff relied upon the representation and agreement of Ryan in making such extension of time and failed to take out other insurance or make arrangements to pay his assessment, thereby acting to his prejudice

in reliance upon the agreement of Ryan for such extension.

That on July 1, 1922, plaintiff paid the assessment due April 24, 1922, for which the time was extended, to Ryan as agent for said Lower Columbia Fire Relief Association. The amount of the assessment was returned to plaintiff by order of director McDonald for the reason, as stated, a settlement of the loss had been made. The loss occurred before the end of the ninety days' extension of time and the payment of the assessment was made or tendered within the stipulated time although after the loss occurred.

R. R. Ryan, as a witness for plaintiff, testified to the effect that he met plaintiff W. W. Rosebraugh on the street in the City of Salem about the time that he, Rosebraugh, received the notice of his assessment, about April 27, 1922; that plaintiff informed him that he was short of money and desired an extension of time to pay his assessment; that he, Ryan, then granted plaintiff ninety days in which to make payment of his assessment; that soon thereafter Ryan told Mr. J. J. McDonald, the director of the association for the Salem district, that he had granted Rosebraugh an extension, referring to other delinquent assessment payers of the association. The witness testified that he told Mr. McDonald that they "were hard run and that they wasn't ready to pay their assessment," and that McDonald said, "I know they are hard run and they haven't sold their prunes and we will have to give them time."

This witness testified that he had granted several other members, for whom he had written policies, extensions of time; that this had been the practice during the seven years he was agent; that he did not think the board of directors ever questioned his au-

thority to grant such extensions. He gave several names of parties to whom he had granted extensions of time to pay their assessments; that the members stated that they would pay ''when the Grange meets.''

Plaintiff W. W. Rosebraugh testified to the same effect in regard to the extension of time and that he knew it was the common practice to grant such extensions; that he relied upon the agreement made by the agent; that if he had not he would have borrowed the money and paid his assessment, or obtained other insurance.

2. In a mutual insurance association the system is, that the members mutually insure each other. It is that form of insurance in which each person insured becomes a member of the company or association and members reciprocally engage to indemnify each other against losses, any loss being met by an assessment laid on all members. As an object to be effected, mutual insurance does not differ materially from any other kind of insurance; it is not properly a distinctive class of insurance, but may embrace all other classes. A mutual insurance association is one in which the members are both the insurers and the insured; and the premiums paid by them constitute the fund which is liable for the losses and expenses, and they share in the profits in proportion to their interest and control and regulate the affairs of the association: 32 C. J., §§ 67, 1018.

The defendant association partakes of the nature of a fraternal association in that all of its members are members of the patrons of husbandry or Grange. It appears that the officers examined the insurance books and talked matters over generally with the members at the meetings. It is a sort of close corporation where all were well informed as to the

methods of conducting the insurance business and manner of treating the holder of certificates of insurance.

Mutual fire insurance companies are recognized and have the right to do business, under the provisions of Section 23, Chapter 203, General Laws of Oregon, 1917, being Section 6399 et seq., Or. L. The defendant is not governed by the general insurance laws of this state. The latter part of Section 6352, Or. L., provides as follows:

"Provided further, patrons of husbandry, fraternal, fire and life insurance associations are exempt from all provisions of this act."

3. An insurer is precluded from asserting a forfeiture for delinquency in payment of a premium or assessment of a mutual insurance association where by its course of dealing or business or its custom, or by any course of conduct, known to insured, it has induced an honest belief on his part that prompt payment of the assessment will not be insisted upon, or that payment need not be made until demanded: 26 C. J., 329; 14 R. C. L. 1183, 1184; *Cranston* v. *West Coast Life Ins. Co.*, 72 Or. 116 (142 Pac. 762); *Hinkson* v. *Kansas City Life Ins. Co.*, 93 Or. 473 (183 Pac. 24); *North American Acc. Ins. Co.* v. *Whitside,* 134 Ill. App. 290.

4. It was the duty of R. R. Ryan, the local agent, to make collections of assessments. As shown by the by-laws quoted, he was answerable to J. J. McDonald, the director for the Salem district. The authority of a local representative of a known insurance company depends to a certain extent on the duties which he actually performs as well as on the provisions of the by-laws: *Patton* v. *Women of Woodcraft,* 65 Or. 33, 40 (131 Pac. 521); *Whigham* v. *Independent Foresters,* 44 Or. 543, 553 (75 Pac. 1067).

Concerning the authority of a local agent of an insurance company to waive conditions in policies, it is said in 14 R. C. L., Section 339:

"The power of insurance agents to bind their principals is to be determined by the power they are held out by the companies to the public as possessing, and not by written instruments of appointment, of which the public could have no knowledge. It is accordingly held that an insurance agent, furnished by his principal with blank applications and with policies, duly signed by the companies officers, and who has been authorized to take risks, to issue policies by simply signing his name, to collect premiums, and to cancel policies and his knowledge is the knowledge of the insurer, notwithstanding any excess of his actual authority."

While the record may not show that Ryan exercised all the authority mentioned in the foregoing quotation, the rule that his authority is measured by what he was actually held out to the members as having authority to do is equally applicable to him.

One of the first Oregon cases relating to the implied authority of a local agent of an insurance company is the case of *Hardwick* v. *State Ins. Co.*, 20 Or. 547, 559 (26 Pac. 840, 844), in which Mr. Justice R. S. Bean, writing the opinion, said:

"Where insurance companies deal with a community through a local agency, persons having transactions with the company are entitled to assume, in the absence of knowledge as to the agent's authority, that the acts and declarations of the agent are as valid as if they proceeded directly from the company. (Citing cases.) And a person who is clothed with power to act for them at all, is treated as clothed with authority to bind them as to all matters within the scope of his real or apparent authority, and persons dealing with him in that capacity are not bound to go beyond

the apparent authority conferred upon him and inquire whether in fact he is authorized to do a particular act.    It is enough if the act is within the scope of his apparent authority.  * * This rule proceeds upon the theory that if any party is to suffer by reason of the wrong-doing of such agent, it should be the company who clothed him with apparent authority and for whom he was acting, rather than the assured, who acted in good faith and innocently became a party to the contract.''

This case was cited by Judge TAFT (now Chief Justice of the United States) while he was judge of the Circuit Court of Appeals in the case of *Greenwich Ins. Co.* v. *Waterman,* 54 Fed. 839, 842.

The authority of the agent Ryan does not rest alone on his testimony.    The by-laws and the other testimony, including that of the director of the district, show the general scope of his duties and authority. The trial court was warranted in considering the apparent authority of the agent Ryan, in taking into consideration the extension of the exercise of such authority as to third persons: *Hardwick* v. *State Ins. Co.,* 23 Or. 290 (31 Pac. 656); *Foste* v. *Standard Ins. Co.,* 34 Or. 125 (54 Pac. 311); *Stringham* v. *Mutual Ins. Co.,* 44 Or. 447 (75 Pac. 822).

5, 6. As a general rule in the absence of a waiver the prepayment of the premium is a condition precedent to the attaching of the risk, the policy taking its life only from the time the premium is paid.    Where, however, the risk has once attached and the insurer before loss acccepts overdue premiums, it thereby waives the right to enforce a forfeiture by reason of the delinquency, and the insured's rights are thereby completely restored.    A waiver results from an agreement to extend the time for payment.    A waiver may result from an attempt to enforce payment as by the

continued retention of a note or other written obligation for a premium coupled with efforts to collect it. A waiver results from the making of an unconditional demand for payment for the full amount of an overdue premium or installment note, or from the making of a demand for payment which recognizes the policy as still existing. This rule is stated in substance in 26 C. J., § 407, p. 327. See, also, *Robinson* v. *Pacific Fire Ins. Co.,* 18 Hun (N. Y.), 395; *Fidelity-Phenix F. Ins. Co.* v. *Jackson County School Dist. No. 62,* 70 Okl. 300 (174 Pac. 513); *Shawnee Mut. F. Ins. Co.* v. *Cannedy,* 36 Okl. 733 (129 Pac. 865, 44 L. R. A. (N. S.) 376).

In 14 R. C. L. 1183, 1184, it is said:

"It is the general rule with respect to policies requiring the periodical payment of premiums and providing for a forfeiture for failure to pay on the day named, that if the insurer customarily receives overdue premiums from the insured, and thereby induces him to believe that a forfeiture will not be incurred by a short delay in the payment of premiums, it cannot insist on a forfeiture for a delay induced by such custom. While the fact that persons other than the insured were customarily allowed grace in the payment of premiums is of no avail where the insured did not know thereof or rely thereon, yet a general custom among insurers to grant a certain period of grace, relied on by the insured, has been given effect."

7. The liability to pay an assessment is a matter of contract. A member of a mutual association may so stipulate to pay assessments as that upon failure to fulfill his obligation an action will lie against him to recover the same: 3 Joyce on Ins. (2d), § 1245; *Beaver St. Ins. Co. Assn.* v. *Smith,* 97 Or. 579 (192 Pac. 789).

In the present case the plaintiff, W. W. Rosebraugh, in consideration of the certificate of insur-

ance on his property, agreed to pay all assessments made upon him by the directors of the Lower Columbia Fire Relief Association, to meet all losses that might occur and the expense of managing the affairs of the association. This stipulation, which we quoted above, contained in plaintiff's application, constituted a binding obligation upon the insured to pay such assessment. The association generally and specifically, as related to the assessment of the plaintiff, at all times exerted its efforts to collect the assessment and in no way evinced an intention of declaring a forfeiture of the certificate of insurance, and recognized the plaintiff's policy as existing in full force.

By the terms of the policy and application of plaintiff he bound himself "to pay his ratable proportion of all assessments made for loss or damage by fire or lightning" in accordance with the Constitution and by-laws during the continuance of the certificate. It appears, however, that in March, 1922, the association made an annual assessment upon plaintiff without regard to whether there had been any losses prior thereto or not. It is not shown that at the time defendant claims the policy was suspended there was any actual requirement of the payment of plaintiff's assessment as a necessity to pay any loss occurring or to pay plaintiff's proportion thereof, and for all that appears the district director could well sanction the extension of time granted by the local agent and reported to the district director, to whom the agent was responsible under by-law No. 25.

No limitation of authority of Agent Ryan in conducting the business entrusted to him appears anywhere in the records of the association. In so far as it appears J. J. McDonald, the district director during the interval between board meetings, had full au-

thority, as much as any manager of a concern would have, to transact any business or to supervise and ratify any act of the district agent. This director denies that he acceded to the granting of an extension of time to plaintiff but any conflict in the testimony is foreclosed by the verdict of the trier of facts.

An excerpt from *New York Ins. Co.* v. *Eggleston,* 96 U. S. 577 (24 L. Ed. 841), found in *Arnold* v. *Emp. Mut. Ann. Life Ins. Co.,* 3 Ga. App. 685 (60 S. E. 470), incorporated in the opinion in *French* v. *Columbia Life & Trust Co.,* 80 Or. 412, 442 (156 Pac. 1042, 156 Pac. 1058, Ann. Cas. 1918D, 484), reads thus:

"Any agreement, declaration, or course of action on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

8. As we view it the policy was in full force and effect at the time of the loss. The plaintiff was not in default in payment of his assessment. The trial court was warranted in so finding. This conclusion renders it unnecessary to consider the effect of the amendment to the by-laws, which question is mentioned in the briefs.

9. Defendant contends that the court erred in rendering judgment for attorney's fees in the action. Section 6355, Or. L., which was enacted in 1919, provides as follows:

"Whenever any suit or action is brought in any court of this state upon any policy of insurance of any kind or nature whatsoever, the plaintiff, in addition to the amount which he may recover, shall also be allowed and shall recover as part of said judg-

ment such sum as the court or jury may adjudge to be reasonable as attorney's fees in said suit or action; provided, that settlement is not made within eight months from date proof of loss is filed with the company; provided, further, that if a tender be made by a defendant in any such suit or action and the plaintiff's recovery shall not exceed the amount thereof, then no sum shall be recoverable as attorney's fees. The terms of this act shall not apply to any suit or action started or begun prior to the passage of this act.''

This section contains general provisions and applies to the case in hand. The trial court was authorized under this section to allow plaintiff a reasonable attorney's fee in the action.

The judgment of the trial court is affirmed.

Affirmed. Rehearing Denied.

Burnett, C. J., and Brown and Belt, JJ., concur.