**AMERICAN INS. CO. OF TEXAS v. THOMAS, Collector of Internal Revenue.**

**No. 11053.**

Circuit Court of Appeals, Fifth Circuit.

Dec. 13, 1944.

Rehearing Denied Jan. 22, 1945.

Percy C. Fewell, of Dallas, Tex., for appellant.

Hilbert P. Zarky, Sewall Key, Helen R. Carloss, and Harold D. Cohen, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and A. W. Christian, Asst. U. S. Atty., of Dallas, Tex., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

Appellant, asserting that it is a mutual, legal reserve, level premium, health and accident insurance company having, but not theretofore exercising, the power of assessment of its members, sued the Collector of Internal Revenue for the recovery of in-

come taxes which it alleges were assessed illegally in the years 1937, 1939, and 1940, largely, perhaps entirely, against the excess of premium receipts over disbursements as reflected in annual increases to its reserve, or mortuary, fund. The lower Court denied recovery.

Appellant operates under the laws of the State of Texas relating to mutual assessment insurance companies writing health and accident insurance. Significant facts and features characterizing the company are: That thirty per cent of its premium receipts in each year are put in an expense fund from which the managers pay the expenses of operation of the company and retain for themselves any surplus after paying the operating expenses. The other seventy per cent of the premium receipts are required by the Texas law to be placed in a Mortuary Fund for the payment of claims of the members, as well as the expense of investigating and settling claims. This latter expense is limited by the Texas authorities to 7.2 per cent of the premium income. The premiums for the first three months on each policy, in addition to the thirty per cent, are also paid into the expense fund to defray operating expense and to compensate the two managers who own and operate the company. The excess of the Mortuary Fund over its disbursements is retained by the taxpayer in the mortuary fund with the proviso that in the event of the dissolution of the company the fund would be distributed to the then existing policyholders.

In actual operation the members took little or no part and generally when a member took out a policy he executed a proxy to the managers authorizing them to represent him at meetings of the members. The managers had a contract with the company whereby they were to manage it, defray all operating expenses, other than those incurred in the investigation and settlement of claims, and to retain for themselves any surplus remaining out of the thirty per cent after paying all expenses other than those connected with the investigation and settlement of claims. The evidence revealed that for the three years in question the compensation to each of the two managers averaged $4418.50 per year. The company could make no profit. It had no stock. There was no provision for the return to the policyholders of any excess of premiums paid over cost of insurance except in the event of dissolution of the company, whereupon the residue of the Mortuary Fund would then be distributed to those who at that time were policyholders in the company. Every policyholder was a member.

The trial Court held that there were deficiencies in the taxable net income as follows: For the year 1937, $3314.92; for the year 1939, $6683.52; for the year 1940, $2201.59. It is conceded by Appellee that the income so assessed in 1937 represented the excess of the receipts over the disbursements of the mortuary or reserve fund, and while no express findings of the increases in the Mortuary Fund in 1939 and 1940 were made, it is conceded that there were increases in each year in this fund and that such increases were taxed as income, and probably constituted the entire sums embraced in each of the deficiency assessments.

The lower Court was requested to find whether or not any of the amounts taxed in each year represented earned or unearned premiums. But the Court replied: "I cannot say that either or any of the above amounts were unearned premiums."

If the company was a mutual company within the contemplation of Sec. 207, then no tax was due on any increases in the Mortuary Fund if the Mortuary Fund was a reserve fund required by law.[1]

Moreover, even if the company were not a mutual insurance company within the purview of Sec. 207, yet if any part of the sums taxed were unearned premiums within the purview of Sec. 204(b) (1) (4) (5), then such part of the taxes as were assessed against such sums would be illegal.[2]

---

[1] Sec. 207(c) (1) (A), Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 207(c) (1) (A), provides for deductions to mutual insurance companies, other than life insurance:

"(A) the net addition required by law to be made within the taxable year to reserve funds (including in the case of assessment insurance companies the actual deposit of sums with State or Territorial officers pursuant to law as additions to guarantee or reserve funds);"

[2] Sec. 204(b) (1) provides income tax on insurance companies, other than life or mutual, and defines gross income as follows:

" 'Gross income' means the sum of (A) the combined gross amount earned dur-

■ An insurance company, other than life or mutual, is taxable upon its net investment income and its net underwriting income. The Appellant apparently has little or no investment income and, if so, and if it is taxable only as an insurance company other than life or mutual, it would be taxable solely upon its net underwriting income as provided in Sec. 204, supra, or on the premiums earned on insurance during the taxable year, less losses and expenses incurred.

Appellant argues to us that the sums taxed in the years in question were all accretions to the mortuary fund and were all unearned premiums within the purview of Sec. 204, supra. If it is correct, then no tax was due.

The final contention is that the Mortuary Fund is a reserve fund required by the law of the State of Texas, and that all of the sums additionally taxed during the years in question were a part of such reserve fund, and that such fund was not income to Appellant and was, therefore, not taxable under the Sixteenth Amendment. If this be true, then no tax would be due.

More succinctly stated, the questions are:

1. Was the Appellant a mutual insurance company, other than life or marine, and taxable as such within the meaning of Sec. 207 of the Internal Revenue Code?

2. If the Appellant was not a mutual insurance company, other than life or marine, were the sums upon which the taxes were assessed unearned premiums and not taxable within the meaning of Sec. 204(b) (5) of the Internal Revenue Code?

3. Were additions to the mortuary or reserve fund of Appellant, as required by the laws of the State of Texas, income, and taxable under the Sixteenth Amendment to the Constitution of the United States?

Out of these three questions and much mental energy, the Appellant has compounded twenty-five specifications of error and one hundred and twenty-one pages of briefs.

Is the Appellant a mutual insurance company?

■ We concur in the view of the lower Court that Appellant was not a mutual insurance company within the purview of Sec. 207. The furnishing of insurance to members at cost is the chief aim and function of a mutual insurance company, and any company which does not return to the policyholders or members the excess of the premium over the cost cannot be said to be a mutual insurance company.[3]

In Penn Mutual Life Insurance Company v. Lederer, 252 U.S. 523, text 525, 533, 40 S.Ct. 397, 398, 64 L.Ed. 698 this principle was succinctly stated:

"It is of the essence of mutual insurance that the excess in the premium over the actual cost as later ascertained shall be returned to the policyholder.

\* \* \* \* \*

"Mutual fire, mutual marine, and mutual life insurance companies are analogous in that each performs the service called insuring wholly for the benefit of their policyholders, and not like stock insurance companies in part for the benefit of persons who as stockholders have provided working capital on which they expect to receive dividends representing profits from their investment."

It is another characteristic of mutual insurance companies that there is no group except the policy holders who have an interest in it who have power over it. Equitable Life Assurance Society v. Bowers, 2 Cir., 87 F.2d 687.

In the present case the excess premium over cost was not returned to the policyholder and the nearest approach to it is the provision calling for the return of the redundancy of the Mortuary Fund to those who are policyholders in the event of, and at the time of, a dissolution. A dissolution might never occur, or if it did, it might occur long after present policyholders are gone, to whom no excess of premium over cost would ever be returned.

Other characteristics of a mutual insurance company are: (a) the members are both insurers and insured; (b) the premiums paid constitute a fund which is to cover losses and expenses; (c) the members share in profits in proportion to their interest; and (d) the members control and regulate affairs of the association.[4]

---

ing the taxable year, from investment income and from underwriting income as provided in this subsection, \* \* \*."

Sec. 204(b) (4) defines underwriting income as follows:

" 'Underwriting income' means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred;"

[3] Mutual Fire Insurance Company of Germantown v. United States, D.C., 50 F.Supp. 665.

[4] Rosebraugh v. Tigard, 120 Or. 411, 252 P. 75.

We must look at the plan of operation of Appellant not merely as it relates to the three tax years in question but as to the general plan and purpose of operation through the years, because most insurance problems must be examined in a long-range perspective. It is noted that the amounts received by the managers were not excessive, but assuredly as the business grew the sums which the managers could receive might reach huge proportions. The greater the amount of premiums collected, the greater would be the profit or remuneration of the managers, and there is no provision made for any of this profit to be returned to the policyholders except upon dissolution of Appellant, which would not likely happen as long as large remuneration was being received by the managers. In the operation of Appellant's business the greater the excess of premium receipts over expenses, the greater would be the managers' profit rather than the saving to the members. The lower Court was correct in its conclusion that the taxpayer was not a mutual insurance company.

The next question in order is whether or not the sums taxed in each year represented unearned premiums received by an insurance company, other than mutual or marine.

If it be true, as it seems to be conceded, that the tax for the years in question was on accretions to the Mortuary Fund, and if it also be true that such accretions to this fund are fixed by law and are irrevocably dedicated to the payment of policy claims of the members, then the Mortuary Fund has all the legal incidents of a reserve fund. General Life Insurance Company v. Commissioner of Internal Revenue, 5 Cir., 137 F.2d 185.

The Mortuary Fund was required by the law of Texas to be put up and maintained for the purpose of paying claims, and this fund cannot be used for any other purpose. It is not income to the Appellant for the reason that it is put up by the policyholders solely for their protection and use. Under the law it can be paid to no one else. It cannot be used by the company except to pay claims of policyholders. It has all of the protective characteristics of the usual reserve fund, and, in fact, is a reserve fund. General Life Insurance Co. v. Commissioner of Internal Revenue, supra.

The health and accident policies are non-cancellable and are written on the level premium basis, and because of the excess of the cost of such insurance in later years, when policyholders grow older, over the level premiums collected in earlier years it can hardly be demonstrated that there is any greater necessity to maintain death reserves than there is to maintain disability reserves. See Helvering v. Oregon Mutual Life Insurance Company, 311 U.S. 267, 61 S.Ct. 207, 85 L.Ed. 180; Massachusetts Protective Association v. United States, 1 Cir., 114 F.2d 304, 310. For the reason that the cost to the insurer of paying its claims will be greater as the policies and members grow older the "entire premium of a non-cancellable health and accident insurance policy could not be wholly earned at the end of the period for which it was paid and be used by the plaintiff in any way it pleased, for by the very nature of the insurance a portion of the premium represents payment now for future coverage at a time when the premium is not sufficient to pay the cost of the insurance." Massachusetts Protective Association v. United States, supra.

It could hardly be maintained that a premium was entirely earned if there yet remained something to be done in later years by the insurer as a part of the consideration of its receipt. The State of Texas has determined that seventy per cent of the premiums should be placed in an inviolable fund for the fulfillment in the future of the insurer's obligation to the insured, and the premium is not entirely earned until the obligation is fulfilled.

So much of the premiums as go into such fund and remain therein after the paying of all losses and charges against said fund could not be characterized as earned premiums or as net underwriting income, nor could it be characterized as net investment income under Sec. 204.

Whatever part of the taxed sums as were derived from insurance premiums and were a part of the increase in the Mortuary Fund of Appellant should have been held to be unearned premiums and deductible from the underwriting income even though the Appellant was not a mutual insurance company.

The conclusion reached renders the third question one in the abstract and makes the answer thereto unnecessary.

The judgment below is reversed and remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

438

HUTCHESON, Circuit Judge (concurring).

While I do not agree with the majority that appellant was not a mutual insurance company, I concur in the view that if it was not such company the sums taxed in each year represented unearned premiums received by an insurance company other than mutual or marine, and were therefore not taxable. While this concurrence reverses the case, I think I should give my reasons for saying that I cannot concur in the conclusion against mutuality. Out of a non-existent and purely imaginary large profit which the managers of the company might make, but have not made and apparently will never make, the district judge and my brethren have evoked the specter of a condition which does not exist to deprive appellant of the mutuality it enjoys by statute and in fact. Taxation should proceed on actualities rather than imaginings and whatever might be said of the company if the large profits and unfair division which they have conjured up in fact existed, it certainly cannot be said of the present set up and operation that there was anything unconscionable or exorbitant about the meager amounts the managers received.